# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

JOSEPH PAUL ZADA,                         Case No. 10-54291
                                          Chapter 7 (involuntary)
     Alleged Debtor.                    Honorable Steven W. Rhodes

_____/

### MOTION OF ALLEGED DEBTOR, PURSUANT TO 11 U.S.C. § 362(k)(1), FOR ORDER IMPOSING SANCTIONS AGAINST (I) RECEIVER OF JOSEPH P. ZADA, <u>ET AL</u>, AND (II) SERGEI FEDEROV, <u>BASED ON WILLFUL VIOLATION OF AUTOMATIC STAY</u>

Joseph Paul Zada, alleged debtor in the above-captioned involuntary Chapter 7 proceedings ("Alleged Debtor"), by his attorneys, Carson Fischer, P.L.C., for his *Motion of Alleged Debtor, Pursuant to 11 U.S.C. § 362(k)(1), For Order Imposing Sanctions Against (I) Receiver of Joseph P. Zada, et. al. and (II) Sergei Federov Based On Willful Violation Of Automatic Stay* ("Motion"), for the reasons stated in the accompanying *Brief in Support* filed herewith, requests that this Court enter the Order imposing sanctions against  (i) the Receiver of Joseph P. Zada, et. al, and (II) Sergei Federov in the form attached hereto as **Exhibit 1**, as specified in the accompanying Brief in Support, and granting such further and other relief as the Court may deem just and appropriate in the circumstances.

On June 1, 2010, Alleged Debtor's counsel sought the concurrence of each of counsel for Federov and the Receiver in the relief sought in this Motion and such concurrence was not received.

Dated: June 1, 2010    CARSON FISCHER, P.L.C.


By: _/s/ Lawrence A. Lichtman_
  Robert A. Weisberg (P26698)
  Lawrence A. Lichtman (P35403)
Attorneys for the Alleged Debtor
4111 Andover Road, West-2nd Floor
Bloomfield Hills, Michigan 48302
Tele: (248) 644-4840
Email(Weisberg): rweisberg@carsonfischer.com
E-mail(Lichtman): llichtman@carsonfischer.com

# EXHIBIT
# 1

*[Proposed Order]*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JOSEPH PAUL ZADA,

        Alleged Debtor.

_____/

Case No. 10-54291
Chapter 7 (involuntary)
Honorable Steven W. Rhodes

**ORDER GRANTING MOTION OF ALLEGED DEBTOR, PURSUANT TO
11 U.S.C. § 362(k)(1), FOR ORDER IMPOSING SANCTIONS AGAINST
(I) RECEIVER OF JOSEPH P. ZADA, ET AL, AND (II) SERGEI FEDEROV,
BASED ON WILLFUL VIOLATION OF AUTOMATIC STAY**

This matter having come before the Court on the *Motion of Alleged Debtor,
Pursuant to 11 U.S.C. §362(k)(1), for Order Imposing Sanctions Against (I) Receiver of
Joseph P. Zada, et al., and (ii) Sergei Federov, Based on Willful Violation of Automatic
Stay* (the "Motion"); the Court having considered the Motion and the responses thereto at
a hearing conducted on _____ __, 2010; and the Court being otherwise fully
advised in the premises;

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that:

1.      Each of Patrick M. O'Keefe and O'Keefe & Associates, LLC
("Receiver"), and Sergei Federov ("Federov") have willfully violated the automatic stay
imposed by 11 U.S.C. §362(a) and they are accordingly subject to the provisions of 11
U.S.C. §362(k)(1) and are sanctioned as hereinafter set forth.

2.      Federov and the Receiver are forever barred from seeking "with
prejudice" dismissal of the Alleged Debtor's involuntary Chapter 7 proceedings.

3.    The Receiver and Federov are jointly and severally liable for, and shall pay, the reasonable and actual attorneys' fees and costs incurred by the Alleged Debtor in connection with preparation for, filings related to, and representation at each of the April 30, 2010 and May 14, 2010 hearings in the Wayne County Action (as defined in the Motion), as well as concerning the Motion and any related filings or proceedings or hearings thereon before this Court, with such fees and costs to be paid directly to the Alleged Debtor's respective professionals.

2

# EXHIBIT
# 2

## *[Notice and Opportunity to Respond]*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JOSEPH PAUL ZADA,

      Alleged Debtor.

_____/

Case No. 10-54291
Chapter 7 (involuntary)
Honorable Steven W. Rhodes

### NOTICE AND OPPORTUNITY TO RESPOND TO: MOTION OF ALLEGED DEBTOR, PURSUANT TO 11 U.S.C. § 362(k)(1), FOR ORDER IMPOSING SANCTIONS AGAINST (I) RECEIVER OF JOSEPH P. ZADA, <u>ET AL</u>, AND (II) SERGEI FEDEROV, <u>BASED ON WILLFUL VIOLATION OF AUTOMATIC STAY</u>

PLEASE TAKE NOTICE THAT the Alleged Debtor has filed *Motion Of Alleged Debtor, Pursuant to 11 U.S.C. §362(k)(1), For Order Imposing Sanctions Against (I) Receiver of Joseph P. Zada, et al., and (II) Sergei Federov, Based on Willful Violation of Automatic Stay* (the "<u>Motion</u>").

<u>Your rights may be affected.</u>  **You may wish to review the Motion and discuss it with your attorney, if you have one in this bankruptcy case. (If you do not have any attorney, you may wish to consult one.)**

If you wish to object to the Court granting the relief sought in the Motion, or if you want the Court to otherwise consider your views on the Motion, within fourteen (14) days of service of this Notice, or such shorter time as the Court may hereafter order and of which you may receive subsequent notice, you or your attorney must:

1.    File with the Court a written response, explaining your position at:[1]

United States Bankruptcy Court
211 West Fort Street, Suite 2100
Detroit, Michigan 48226

If you mail your response to the Court for filing, you must mail it early
enough so the court will **receive** it on or before the date above.

You must also mail a copy to:

**Carson Fischer, P.L.C.**
Robert A. Weisberg, Esq.
Lawrence A. Lichtman, Esq.
4111 Andover Road, West – 2nd Floor
Bloomfield Hills, Michigan  48302

**2.** If a response is timely filed and served, the Clerk will schedule a
hearing on the Motion and you will be served with a notice of the date,
time and location of the hearing.

Dated:  June 1, 2010                CARSON FISCHER, P.L.C.


By:  _/s/ Lawrence A. Lichtman_____
     Robert A. Weisberg (P26698)
     Lawrence A. Lichtman (P35403)
     Attorneys for the Alleged Debtor
     4111 Andover Road, West-2nd Floor
     Bloomfield Hills, Michigan 48302
     Tele:  (248) 644-4840
     Email(Weisberg): rweisberg@carsonfischer.com
     E-mail(Lichtman):  llichtman@carsonfischer.com

---

[1] Response or answer must comply with F.R. Civ. P. 8(b), (c) and (e).

# EXHIBIT 3

*[Brief]*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JOSEPH PAUL ZADA,　　　　　　　　　　Case No. 10-54291
　　　　　　　　　　　　　　　　　　　　Chapter 7 (involuntary)
　　　　　　Alleged Debtor.　　　　　　　Honorable Steven W. Rhodes
_____/

### BRIEF IN SUPPORT OF MOTION OF ALLEGED DEBTOR, PURSUANT TO 11 U.S.C. § 362(k)(1), FOR ORDER IMPOSING SANCTIONS AGAINST (I) RECEIVER OF JOSEPH P. ZADA, ET AL, AND (II) SERGEI FEDEROV, BASED ON WILLFUL VIOLATION OF AUTOMATIC STAY

Joseph Paul Zada, alleged debtor in the above-captioned involuntary Chapter 7 proceedings ("Alleged Debtor"), by his attorneys, Carson Fischer, P.L.C., for his *Brief in Support Of Motion of Alleged Debtor, Pursuant to 11 U.S.C. § 362(k)(1), For Order Imposing Sanctions Against (I) Receiver of Joseph P. Zada, Et. Al, and (II) Sergei Federov Based On Willful Violation Of Automatic Stay* ("Motion"), states:

### STATEMENT OF FACTS

On April 29, 2010, certain petitioning creditors filed an involuntary Chapter 7 petition against Alleged Debtor to initiate these proceedings. Thereafter, the petitioning creditors, as well as creditor Sergei Federov ("Federov"), filed their respective motions to dismiss the case, which were unopposed by the Alleged Debtor.

Following a hearing on May 18, 2010 before this Court, on the respective motions to dismiss, this Court entered an Order of Dismissal. Pursuant to the terms of the Order of Dismissal, among other things, this Court retained jurisdiction "to consider the alleged debtor's motion for sanctions for violating the automatic stay."

Alleged Debtor has brought the Motion corresponding hereto based on the conduct of each of Patrick M. O'Keefe and O'Keefe & Associates, the Receiver ("Receiver") in the Wayne County Action (hereinafter defined), and creditor Sergei Federov in continuing to prosecute proceedings in the Wayne County Circuit Court, in that certain case entitled Sergei Federov, Plaintiff v. Joseph Zada, et al., Defendants, Case No. 09-018061-CV (the "Wayne County Action"), including participating in hearings in the Wayne County Action on each of April 30, 2010 and May 14, 2010 and affirmatively seeking and obtaining post-petition relief in the Wayne County Action against the Alleged Debtor, as evidenced by the copies of the relevant hearing transcripts attached hereto as **Exhibits A** and **B**, respectively, which relief against the Alleged Debtor is further evidenced by that certain Order entered in the Wayne County Action and attached hereto as **Exhibit C.**

At the April 30, 2010 hearing in the Wayne County Action, Alleged Debtor's state court counsel advised Judge Sapala of the involuntary Chapter 7 proceedings involving the Alleged Debtor and sought to stay the Wayne County Action. See, Exhibit A, Transcript of April 30, 2010 hearing, at pp. 5-6. Judge Sapala required briefing on the issue. Thereafter, the May 14, 2010 hearing occurred in the Wayne County Action, resulting in a bench ruling and subsequent entry of the Order attached hereto as **Exhibit C.**

## ARGUMENT

11 U.S.C. § 362(a), in pertinent part, states:

§362 Automatic stay

(a)     Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of —

2

> (1)     the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

> (2)     the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3)     any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

> \* \* \*

> (6)     any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

Id.

11 U.S.C. §362(k)(1) provides:

> (k)(1)  Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Id.

By virtue of the reference to Bankruptcy Code § 303, which is contained within the above-quoted language of the automatic stay in 11 U.S.C. §362(a), the automatic stay applies with equal force to involuntary cases. Notwithstanding the pendency of the involuntary case, these parties, through their respective counsel, willfully chose to proceed in violation of the automatic stay against the Alleged Debtor and his property in furtherance of advancing their objectives in the Wayne County Action.

In the Wayne County Action, Federov sought and obtained entry of a default judgment against the Alleged Debtor and several related parties, including, but not limited to, Equest

3

Properties, LLC ("Equest"). As this Court is aware, Equest was similarly the subject of an involuntary Chapter 7 petition before this Court. The sole purpose of the Receiver in the Wayne County Action is to locate and liquidate assets of the judgment debtors, including the Alleged Debtor herein.

By definition, the Wayne County Action, and the work of the Receiver related thereto is to take action against the Alleged Debtor and his property. As Mr. Weisberg succinctly stated on the record at the May 14, 2010 hearing in the Wayne County Action:

> This proceeding in its entirety is designed for one purpose and one purpose only, and that is to collect a debt. Accordingly, whether the court's order has been violated, whether it is an order out there outstanding that would require Mr. Zada to do certain things, those issues all relate to the enforcement of an outstanding judgment or outstanding claims of creditors and to collect obligations that are allegedly owed by Mr. Zada.
>
> To the extent that this court is going to impose requirements on Mr. Zada in furtherance of that order, that in my mind that imposition today, as opposed to maybe some day next week when and if the case gets dismissed in bankruptcy is in violation of the automatic stay.

See, **Exhibit B**, Transcript of May 14, 2010 hearing, at p. 42.

The record of the April 30 and May 14, 2010 hearings in the Wayne County Action, both of which occurred subsequent to the commencement of the Alleged Debtor's involuntary Chapter 7 case and prior to its dismissal and the corresponding lifting of the automatic stay imposed thereby, make clear that Federov and the Receiver were frustrated with their inability to date to locate and liquidate assets of the Alleged Debtor. Prior to the filing of the involuntary Chapter 7 petition against Alleged Debtor, Federov and the Receiver sought findings of contempt against the Alleged Debtor in the Wayne County Action, both civil and criminal, and for the Alleged Debtor to be enjoined from prosecuting or participating in further litigation against the Receiver in Florida. Federov and the Receiver additionally sought, and ultimately obtained post-

4

petition an order in the Wayne County Action requiring the Alleged Debtor to "reimburse the Receiver for all costs and attorneys' fees incurred to date, the amount to be determined by this Court." See, **Exhibit C**, Order.

Prior to the May 14, 2010 hearing in the Wayne County Action, the Receiver's Brief in Response to Defendants' Motion for Stay of Action argued, in pertinent part, that the automatic stay applies neither to civil nor criminal contempt proceedings. Federov concurred in the Receiver's position. However, Judge Sapala made clear on the record at the May 14, 2010 hearing in the Wayne County Action, that the relief he was granting to Federov and the Receiver at that hearing was not based on any finding of contempt. Judge Sapala stated, "I am not making any finding of contempt of any sort today." See, **Exhibit B**, Transcript of May 14, 2010 hearing, at p. 42.

Thus, the relief otherwise sought by Federov and the Receiver at the May 14, 2010 hearing in the Wayne County Action, and granted by Judge Sapala at such hearing, could not even be arguably excepted from violation of the stay based on a contempt proceeding. Thus, there was clearly action against the Alleged Debtor and his property rights in violation of the stay. There can be no doubt that the action taken was willful, given that these parties purposefully sought the relief ultimately granted.

These actions were nothing other than conduct in furtherance of the attempt by the Receiver and Federov to liquidate a money judgment against the Alleged Debtor. The nature of the activity of these individuals and the clear violation of the stay is so obvious as not to require further briefing to this Court.

Federov has sought "with prejudice" dismissal of Alleged Debtor's involuntary Chapter 7 case. As part of the sanctions to be assessed, this Court should order that Federov, as well as the

5

Receiver, are forever barred from attempting to further prosecute any such "with prejudice" dismissal request. At the May 14, 2010 hearing in the Wayne County Action, Federov's counsel argued:

> [T]he only reason that court orders in our country work is that people respect them. If we all woke up yesterday and said we didn't, then they wouldn't. Once an order is violated it has got to be sanctioned.

See, Exhibit B, Transcript of May 14, 2010 hearing, at p.22.

Alleged Debtor could not agree more. The automatic stay has been violated and the perpetrators should be sanctioned.

Furthermore, Alleged Debtor submits it would be further appropriate sanctions against the Receiver and Federov for them to pay the reasonable and actual attorneys' fees and costs incurred by Alleged Debtor in connection with preparation for, including filings, and representation at each of the April 30 and May 14, 2010 hearings in the Wayne County Action, as well as concerning the instant Motion and any related filings or proceedings before this Court, with such fees and costs to be paid directly to the Alleged Debtor's respective professionals, and that the Court grant such other and further sanctions against each of the Receiver and Federov as the Court may otherwise deem just and appropriate in the circumstances.

## CONCLUSION

WHEREFORE, for the forgoing reasons, the Alleged Debtor respectfully requests that this Court (i) find that each of the Receiver and Federov have willfully violated the automatic stay imposed by 11 U.S.C. § 362(a) and that they are accordingly subject to the provisions of 11 U.S.C. §362(k)(1), (ii) order that as part of the sanctions to be imposed against Federov and the Receiver, that they are each forever barred from seeking "with prejudice" dismissal of Alleged Debtor's involuntary Chapter 7 proceedings, (iii) order that each of the Receiver and Federov are

6

jointly and severally liable for and shall pay the reasonable and actual attorneys' fees and costs incurred by Alleged Debtor in connection with preparation for, filings related to, and representation at each of the April 30 and May 14, 2010 hearings in the Wayne County Action, as well as concerning the instant Motion and any related filings or proceedings before this Court, with such fees and costs to be paid directly to the Alleged Debtor's respective professionals, and (iv) that the Court grant such other and further sanctions against each of the Receiver and Federov, as the Court may otherwise deem just and appropriate in the circumstances given the willful violation of the automatic stay.

Dated: June 1, 2010           CARSON FISCHER, P.L.C.


By: _/s/ Lawrence A. Lichtman_____
    Robert A. Weisberg (P26698)
    Lawrence A. Lichtman (P35403)
Attorneys for the Alleged Debtor
4111 Andover Road, West-2nd Floor
Bloomfield Hills, Michigan 48302
Tele: (248) 644-4840
E-mail (Weisberg): rweisberg@carsonfischer.com
E-mail (Lichtman): llichtman@carsonfischer.com

7

# EXHIBIT

# A

1                      STATE OF MICHIGAN

2        IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

3

4      SERGEI FEDOROV,

**COPY**

5               Plaintiff,

6           -vs-           Case No. 09-018061-CK

7      JOSEPH P. ZADA, SERGEI FEDOROV,
        EQUEST PROPERTIES, LLC, and
8      XANDARIUS LLC,

9               Defendants,

10          -and-

11    PEOPLES STATE BANK,

12             Intervening-Plaintiff,

13         -vs-

14    JOSEPH P. ZADA, SERGEI FEDOROV,
        EQUEST PROPERTIES, LLC, and
15    XANDARIUS LLC,

16            Defendants.
        ————————————————————/
17

18

19           PROCEEDINGS HAD in the above-entitled cause

20  before the HONORABLE MICHAEL F. SAPALA, Judge, Third

21  Judicial Circuit, Courtroom 1707 CAYMC Building,

22  Detroit, Wayne County, Michigan, on Friday, April 30,

23  2010.

24

25

```
 1    APPEARANCES:

 2

 3                   LOUIS P. ROCHKIND, Esq.,

 4                        On behalf of Sergei Fedorov.

 5                   THOMAS BRUETSCH, Esq.,

 6                        On behalf of Peoples State Bank.

 7                   BENJAMIN J. ALOIA, Esq.,

 8                        On behalf of Joseph Zada.

 9                   ZENNA ELHASAN, (Limited appearance)

10                        On behalf of Sabat Zada.

11                   MARK KRIGER, Esq., (Limited appearance)

12                        On behalf of Joseph Zada.

13                   STEVEN BUQUICCHIO, Esq.,

14                        On behalf of Receiver Patrick
                          O'Keefe.
15

16

17

18

19

20

21

22

23

24

25
```

2

1

# T A B L E   O F   C O N T E N T S

2

3    Witness:                                    Page

4
    ^Opinion of the court.............   19
5

6

7

8

9

10

11

12

13

14
                      E X H I B I T S
15

16    Identification            Marked    Received

17    (None.)

18

19

20

21

22

23

24

25

3

```
 1                      Detroit, Michigan

 2                      Friday, April 30, 2010

 3          ---        ---        ---

 4              (At 9:41 a.m. matter commenced.)

 5

 6          THE CLERK:  Case number 09-018061-CK, Sergei

 7   Fedorov versus Joseph Zada.

 8          THE COURT:  Okay, let's take rollcall.

 9          MR. BRUETSCH:  Thomas Bruetsch on behalf of

10   Peoples State Bank.  Good morning, Your Honor.

11          THE COURT:  If you could go slowly, Mr.

12   Bruetsch, you are well known to this court.

13          MR. ROCHKIND:  I'm Larry Rochkind with Jaffee

14   Raitt Heuer and Weiss.  It is R-O-C-H-K-I-N-D.  My

15   partner Peter Alter usually appears, he is in a hearing

16   out of court today, and I am representing Sergei

17   Fedorov.

18          MR. BUQUICCHIO:  Steven Buquicchio on behalf

19   of the receiver.

20          MR. KRIGER:  Good morning, Your Honor, Mark

21   Kriger on behalf of Joseph Zada.  I represent Mr. Zada

22   in the two current Grand Jury investigations; one, in

23   the Southern District of Florida and one in the Eastern

24   District of Michigan.  And I am prepared to deal with

25   any of the criminal issues that are involved.
```

4

1    I have not entered an appearance.  If the

2    court would like me to, I would, and I don't know that

3    it's necessary.

4         THE COURT:  Not necessary.

5         MR. ALOIA:  Benjamin Aloia on behalf of the

6    defendants in this case are Joseph Zada, Zada

7    Enterprises and Xandarius and Equest Properties.

8         MS. ELHASAN:  Good morning, Your Honor, Zenna

9    Elhasan appearing in a limited capacity on behalf of

10   Sabat Zada.

11        MR. JOSEPH ZADA:  Joe Zada.

12        THE COURT:  All right.

13        MR. O'KEEFE:  Patrick O'Keefe, Your Honor the

14   receiver.

15        THE COURT:  Let's deal with the subpoena

16   issues with regard to Sabat Zada.

17        MR. ALOIA:  If I may, Your Honor as a

18   preliminary matter, last night at approximately 4:30 I

19   was served with a petition of involuntary bankruptcy as

20   to Joseph Zada.  There is a group of creditors that

21   filed that petition last night, our position is as a

22   matter of law this matter is stayed, not only as to

23   Joseph Zada but as to all of his entities in which they

24   are single member entries and his assets.

25        I have for presentment, Your Honor, an order

5

1     for administrative closing due to bankruptcy stay. As
2     I said this has been an involuntary bankruptcy this is
3     not what Joseph Zada filed. Numerous creditors filed
4     this against him.

5          It's clear that immediately upon the filing
6     of a petition commencing a case under the bankruptcy
7     code, whether voluntary or involuntary a statutory
8     automatic stay goes into effect prohibiting, a wide
9     variety of creditor acts. That's 11 USCA, section 362,
10    (A).

11         THE COURT: Now, I will ask that you all of
12    you to my right become aware of this filing.

13         MR. ROCHKIND: Yes.

14         MR. BUQUICCHIO: Go ahead.

15         MR. ROCHKIND: I did late last night I of
16    course represent the movant and I'd like to speak to
17    that if I may.

18         MR. BUQUICCHIO: And I did indeed also
19    receive that late at night, haven't had an opportunity
20    to do anything else with it by way of the effect on the
21    receivership and so on.

22         THE COURT: And Mr. Bruetsch, you became
23    aware of this?

24         MR. BRUETSCH: I became aware of it I saw it
25    on my Blackberry late last night, like brother counsel

6

1      I have not had an opportunity to study it, I noted it

2      was as to Mr. Zada individually, not any other

3      entities.

4              And you know we can speak about the merits to

5      that.  Obviously, there are bankruptcy issues with

6      regard to Mr. Zada, but I think we all want to look at

7      the other entities which are not subject of the

8      petition.

9              THE COURT:  Go ahead.

10             MR. ALOIA:  Thank you, Your Honor.  Our

11     position is that I don't think there is any question

12     that this matter is stayed as to Mr. Zada individually

13     under the bankruptcy code.  I don't think anybody here

14     is disputing that.

15             And so any motions that have to do with him

16     individually, must be stayed by this court.  I guess

17     the issue that would be raised by the defendants in

18     this case, are -- or by the plaintiff and by the

19     receiver this case is what happens to the entities

20     which are single member entities of Joseph Zada.

21             THE COURT:  What happens to his action in

22     Florida?

23             MR. ALOIA:  Any litigation against him

24     individually or on his behalf is then stayed as well.

25             THE COURT:  Okay.  Continue.

                              7

1      MR. ALOIA:  Your Honor, our position is that

2   this matter should also -- this court should also stay

3   the receivership as to the other entities because they

4   are co-debtors in interest, this judgment is against

5   all of them, and they are intertwined with Joseph Zada.

6      You can't separate the interests of the

7   corporation from Joseph Zada.  He is the only member,

8   he derives income from these entities, and there is --

9   there is assets in.  According to the bankruptcy code

10  an automatic stay affects any act to collect assess or

11  recover any claim against a debtor, having to do with

12  his assets.

13     THE COURT:  As I sit and listen to you, I

14  don't know how I am in any position to make a ruling

15  today.  This is all new.  The other side I think

16  deserves an opportunity to contest your position.

17     Let me hear from them.

18     MR. ROCHKIND:  May I say a word Your Honor?

19     THE COURT:  Sure.

20     MR. ROCHKIND:  I am not a familiar face in

21  this court.  Because the last time I was in this court

22  was 1974.  In the intervening 35 years I have spent my

23  career in the bankruptcy courts, that's what I do.

24     THE COURT:  All right.

25     MR. ROCHKIND:  The fact of the matter is is

8

1    that a lawyer can say whatever he wants, but the
2    automatic stay of section 362 applies to the debtor and
3    his property not to any other entities.

4         It never applies to co-debtors.  Chapter 13
5    of the bankruptcy code has a specific provision
6    applying the stay to co-debtors, chapter 7 does not.
7    And this is --

8         THE COURT:  This is a chapter 7.

9         MR. ROCHKIND:  This is a chapter 7.  I'm not
10   saying any brilliant to you.  This is Black Letter
11   garden variety law.  The reason is very, very simple.
12   The automatic stay is a tremendous benefit.  It stops
13   creditor action against the debtor and its assets dead
14   in its tracks.  But to get that tremendous benefit you
15   have got to file a petition.

16        And if you are not in bankruptcy, you don't
17   get the benefit.  There is nothing -- with all due
18   respect there is nothing to brief here.  If a
19   corporation or an LLC wants the benefit of the
20   bankruptcy of the automatic stay it has got to file.

21        If I file bankruptcy and I own a share of
22   stock, if I own 99 percent of General Motors, General
23   Motors doesn't get the stay; that's number one.

24        Number two, Mr. Zada is really not in
25   bankruptcy yet.  Because the way this works is, it's an

9

1  involuntary petition, Mr. Zada has 30 days to respond,

2  depending on how he responds and what the judge decides

3  an order for relief will be entered. And then his

4  bankruptcy case will in fact commence.

5  The way the code works is that when the

6  involuntary is filed, the automatic stay does go into

7  effect to protect him in the interim. But that is just

8  him and his assets. It does not protect Equest

9  Properties, it does not protect anything else.

10  Number three, in answer to your question as

11  to what happens to his lawsuit in Florida. As soon as

12  the order for relief is entered, and it will be in this

13  case, because the test, the yard stick the bankruptcy

14  judge will use is whether Mr. Zada is paying his debts

15  and he is not. As soon as that order is entered if not

16  sooner by motion a trustee will be appointed.

17  THE COURT: Which order?

18  MR. ROCHKIND: The order for relief by the

19  bankruptcy court that puts him into bankruptcy

20  officially, if you will.

21  As soon as that order is entered, a trustee

22  will be appointed from the panel of trustees, and at

23  that point only the trustee can pursue any cause of

24  action which belongs to Mr. Zada.

25  Interestingly and importantly, the trustee of

10

1     Mr. Zada's case can't pursue the Equest Properties

2     causes of action because they are not in bankruptcy.

3     It would be ludicrous for Equest Properties to get the

4     benefit of the stay, when it is not in bankruptcy and

5     there is no trustee over it to administer it.  It

6     doesn't work that way.  There is law.

7          In 1979, when this bankruptcy reform act was

8     enacted, it was common for bankruptcy court to issue

9     stays against co-debtors.  Not any more.  That has been

10    changed.  There's 6th circuit law specifically on

11    point.

12         Again I don't have to be a brilliant lawyer

13    to tell you that, this is obvious.  And the only way to

14    get a co-stay to get the judge to expand the automatic

15    stay.  This court -- this court can stay under whatever

16    authority it has to issue injunctions, and I am not

17    familiar with that, obviously this court cannot expand

18    the automatic stay of section 362, that is within the

19    specific jurisdiction of the federal bankruptcy court.

20         So lawyers can stand up say whatever they

21    want, but it not right.  And we shouldn't have to brief

22    it.  It just isn't right.  I could say that this court

23    could hear bankruptcy cases and that wouldn't be right.

24    And that's what we are hearing from Mr. Aloia.

25         MR. ALOIA:  Your Honor, if may and I didn't

```
 1    get to finish my argument.  And the completion of my
 2    argument would have been, is that we are entitled to
 3    the benefit of an injunction for that very reason.
 4         I know this happened last night.  We would
 5    like to brief that issue.  In the interim, I would ask
 6    the court as to the corporations, to hold its decisions
 7    in abeyance until we get prove to this court that an
 8    injunction is appropriate as to these other entities
 9    because they are -- the interests are intertwined.
10         THE COURT:  Let's see what we have before us
11    right now.
12         MR. KRIGER:  Okay.
13         THE COURT:  We have got a motion to compel
14    the appearance of Sabat Zada subpoenaed deposition, and
15    your view is that we could go ahead and hear argument
16    and rule on that motion.
17         MR. ROCHKIND:  Absolutely.
18         THE COURT:  Your position is that --
19         MR. ALOIA:  No.
20         THE COURT:  -- you cannot.
21         MR. ALOIA:  No.
22         THE COURT:  I just want to go through this
23    make sure we know what is up here.
24         MR. KRIGER:  Okay.
25         THE COURT:  We have a motion for authority to
```

12

1      pay expenses brought by the receiver I believe.

2               MR. BUQUICCHIO:  Absolutely, Your Honor.

3               THE COURT:  And is it your position we can

4      proceed with that motion.

5               MR. BUQUICCHIO:  Absolutely, Your Honor.

6               THE COURT:  And it is your position that we

7      can or cannot?

8               MR. ALOIA:  That's correct, Your Honor, we

9      cannot.

10              THE COURT:  Can or cannot?

11              MR. ALOIA:  Cannot.

12              THE COURT:  We have the order to show cause

13     this is the receiver's ex parte motion for order to

14     show cause with regard to Joseph Zada.  And it's

15     evident we can't -- we can't go against Mr. Zada

16     individually now, but the motion is also with regard to

17     Equest Properties and it is your position that we can

18     go forward with regard to Equest?

19              MR. BUQUICCHIO:  Absolutely Your Honor.

20              THE COURT:  It's your position we cannot?

21              MR. ALOIA:  Correct, Your Honor.

22              THE COURT:  Are there any other motions up

23     today?

24              MR. BUQUICCHIO:  Those are the three, Your

25     Honor.

13

1          THE COURT:  That's it, right?

2          Now I have just been advised by an attorney

3     who may have expertise in this area, far more than this

4     court has and perhaps arguably more than any of the

5     other lawyers.

6          MR. KRIGER:  Certainly more than I have, Your

7     Honor.

8          THE COURT:  Certainly more than Mr. Kriger.

9          MR. KRIGER:  Though one day I will have to

10    file bankruptcy.

11         THE COURT:  Given his narrow focus of

12    interest in the law.

13         Do I deny an attorney a chance nevertheless

14    to respond and give me some law so that we can make a

15    ruling?  I think I have to give him that opportunity as

16    clear as the issue may be to you.

17         MR. ROCHKIND:  Let's -- let's -- if I may ask

18    the court just to focus on what that issue and

19    opportunity will be.

20         THE COURT:  Okay.

21         MR. ROCHKIND:  If the issue that counsel

22    wants to present is that this court has the authority

23    the expand the automatic stay to cover other entities,

24    then you should not permit that.  Because this is not a

25    bankruptcy court.  You could never do that.  And we

14

1  shouldn't have to brief that.  That is 11 USC section

2  362.

3       You would never have authority to issue an

4  order under that section.  So if that's what's being

5  asked you should not give that opportunity.

6       If what is being asked is for this court to

7  enter a temporary injunction, pending a request to the

8  bankruptcy court to expand the automatic stay, that

9  goes to the court that's going to consider that, the

10  bankruptcy court, and you shouldn't give time for that.

11       So my question is, what are giving time for

12  and what will we accomplish?

13       THE COURT:  Let me ask you, since you have

14  asked for the time, what do you want to do with that

15  time?  The time would be very brief.

16       MR. ALOIA:  Your Honor, we have -- this has,

17  this has come out of left field.  We have contacted

18  bankruptcy counsel we have plan to meet with them on

19  Tuesday to figure out what our rights and

20  responsibilities are.

21       Also, the question of whether or not these

22  corporations will be filing for bankruptcy as well, has

23  come into play.  We have received notification from

24  these creditors that they plan to file involuntarily as

25  to these corporations.

15

1          And if not, Mr. Zada needs to consider if he

2    is going to -- if he is not going to fight the

3    involuntary petition whether or not it is prudent for

4    him to put his corporations immediately into

5    bankruptcy.  And, therefore, any decision today really

6    would have not much effect.

7          MR. ROCHKIND:  Well if I may, I beg your

8    pardon, if I may.

9          The way you file a voluntary petition is that

10    you fill out a piece of paper and you sign it and you

11    pay a fee.  There is no need to say anything if Mr.

12    Zada wants to file a petition.  He can do that today,

13    or tomorrow.  And I'll agree once those companies are

14    in bankruptcy they are stayed.

15          But why in the word would a judge delay

16    anything waiting to see if a litigant decides to do

17    something?  You wouldn't have much of a job if you did

18    that.  You would be waiting all day.

19          THE COURT:  Well, I'm faced with this

20    problem.  We have got an action less than 12 hours ago,

21    is that right, that may have a substantial impact on

22    how this case goes and how it looks, and what this

23    court is to do.

24          And I am asked by one side to have some time

25    to persuade me we should not go ahead hear argument and

1    make rulings on these three motions.

2        And I think that request notwithstanding

3    counsel's expertise and knowledge in the area is not an

4    unreasonable request.

5        So I'm going to give you that time. We are

6    going to hold off on hearing argument on any of these

7    motions for a limited period of time.

8        Now, the important question is, how much

9    time? Suggest to me what you think would be reasonable

10   and we will talk to the other side

11        MR. ALOIA: I mean 14 days would be -- we

12   would like 14 days if we could. I am here the next two

13   Fridays anyways. If the court wants a lesser period of

14   time, I'm here next Friday.

15        I would like to be able to brief the issue on

16   the preliminary injunction and I would like some time

17   to be able to file that. If the court wants to have an

18   expedited -- I don't know if I could file that today, I

19   mean we will file it Monday, but if it --

20        THE COURT: I think 14 days is more than

21   reasonable.

22        Now what do we mean by 14 days? Do we mean

23   that you get whatever pleadings you have within 14 days

24   and we hear argument on that in 14 days?

25        MR. ALOIA: No, I would have the pleadings in

17

1    by the end of week and we could have the hearing in

2    14 days.

3         MR. BUQUICCHIO:  Your Honor, there is the

4    issue of a proceeding going on in Florida which we

5    expressed to the court was a clear violation of the

6    receivership order.

7         With our motion to show cause we asked for

8    the ability to have that action stayed to prevent Mr.

9    Zada and his entities from proceedings.

10        THE COURT:  Didn't I sign that?

11        MR. ROCHKIND:  You did do that, Your Honor.

12   But within this 14-day period there is going to be a

13   hearing in Florida on this, and I guess I would ask the

14   court to allow that stay to stay in place while the

15   briefing period is in effect.

16        THE COURT:  It shall stay in place.

17        MR. ALOIA:  May I respond to that Your Honor?

18        THE COURT:  You may.

19        MR. ALOIA:  Okay.  And the reason why that

20   concerns me, Your Honor, is since the receiver has

21   received this injunction from you, they filed a motion

22   to strike our pleadings.  And so while they have stayed

23   us from defending the case, they have aggressively

24   litigated it which we belive is unfair.

25        So my position would be, if you are staying

18

```
1     it as to us, Your Honor, you should stay it as to the

2     receiver as well, because it is not fair to tie our

3     arms and let the receiver continue the litigate the

4     issues.

5               MR. BUQUICCHIO:  Your Honor --

6               THE COURT:  Go ahead.

7               MR. BUQUICCHIO:  And I --

8               THE COURT:  Go ahead.

9               MR. BUQUICCHIO:  -- was going to say, Your

10    Honor, we are defending not prosecuting.

11              THE COURT:  That TRO is extended until at

12    least the 14th of May.

13              MR. ALOIA:  So if there is a hearing before

14    the 14th, are we not -- on his motion we are not

15    permitted to defend that hearing in Florida?  Just so I

16    am trying to understand the court's ruling.

17              THE COURT:  Is that what the consequence is?

18              MR. BUQUICCHIO:  As I understand it, Your

19    Honor, Mr. Zada's attorney in Florida filed the -- your

20    order in the court.  And my understanding is that he

21    advised the court that they are not going to do

22    anything, nor do they want to do anything pending an

23    order from this court.

24              THE COURT:  That was my understanding.

25    That's why you took me back a little bit when you said
```

19

```
1    you wouldn't be able to defend himself, I don't think
2    we get to that point yet.
3            MR. ALOIA:  Well my question is on their
4    motion that they filed, since the injunction has been
5    issued, my request is that they stay that motion and
6    any further actions down in Florida until this issue is
7    resolved here.
8            MR. BUQUICCHIO:  If I can respond, Your
9    Honor.  I am not a Florida lawyer, but might
10   understanding of why that was done as opposed to filing
11   an answer was because we did not want to submit to
12   jurisdiction.
13           So what we did was our attorney in Florida
14   said let's just do prophylactically a motion to strike
15   the pleadings.  I don't believe it has been set for
16   hearing, I don't know that it has been set for hearing.
17   But to the extent that a hearing is supposed to take
18   place within this briefing period, I don't believe we
19   would object to staying that.
20           THE COURT:  All right.  Again the effect of
21   extending this TRO will have the effect of staying
22   those proceedings.  All right.
23           MR. ROCHKIND:  May I ask one other curtesy if
24   I may?
25           THE COURT:  You may.
```

20

```
 1              MR. ROCHKIND:  Forgive me.  Mr. Aloia

 2    mentioned he has consulted with a bankruptcy counsel,

 3    may I ask who that is.

 4              THE COURT:  I guess you can ask anything you

 5    wish, I am not sure he needs to tell you.

 6              MR. ROCHKIND:  Okay.

 7              MR. ALOIA:  We haven't engaged him yet, so

 8    until -- once he is engaged.

 9              MR. ROCHKIND:  Thank you.

10              MR. ALOIA:  Your Honor, I am going to request

11    the court to enter the order for administrative closing

12    due to bankruptcy stay as to Joseph Zada only today.  I

13    don't think there is any dispute as to that today?

14              MR. ROCHKIND:  It is absolutely in dispute,

15    because the order for relief has not been entered.  It

16    has -- it would be completely inappropriate.  Those

17    orders get entered when a voluntary petition is filed

18    and the order for relief is automatic, and they get

19    entered, when a judge determines the involuntary

20    petition, never before, because the party's not yet

21    really in bankruptcy.

22              THE COURT:  No, we will --

23              MR. ALOIA:  That's not correct, it's upon the

24    filing of the petition, Your Honor.  We disagree.

25              THE COURT:  No, we will await May 14th.  We
```

21

1    can decide that then as well.

2         Yes.

3         MR. BUQUICCHIO:  Can I address one thing,

4    Your Honor?

5         On our motion for payment of expenses, we

6    believe that this is an administrative matter.  And I

7    wanted to bring it to the attention of the court that

8    we are looking to get Mr. O'Keefe's attorney in Florida

9    paid.  To us it seems -- it is outrageous that Mr. Zada

10   has hired three high priced attorneys --

11        THE COURT:  No, look I understand, but what

12   is it they say, consistency is the hobgoblin of small

13   minds, but we can't parse that out and rule on his and

14   not the others.  We are all together on this.  I mean

15   we are going to deal with it on the 14th.

16        MR. BUQUICCHIO:  I thought I would try, Your

17   Honor.

18        THE COURT:  Now, all right, you are going to

19   have your response in by a week from today.

20        MR. ALOIA:  Yes, Your Honor.

21        THE COURT:  You're under the gun.  And

22   obviously you are going to be served with same, and the

23   other side can respond hopefully by the 13th of May so

24   I can have at least a few minutes to look at all these

25   pleadings.  So we are prepared to hear argument and

1     hopefully rule on the 14th.

2           Let me give you a time later in the morning.

3     This is going to take more than the average motion on

4     Friday.

5           We have got Dearborn up at 11 o'clock.  What

6     are we doing on Dearborn?  Mr. Brooks is still here.

7     Summary disposition.

8           12 o'clock.  And Mr. Kriger if you want to

9     join us then you may.

10          MR. KRIGER:  No -- well I guess -- and I -- I

11    guess, the bankruptcy is in the area that I have

12    absolutely no, well I shouldn't say no idea, I did a

13    bankruptcy fraud once.

14          Assuming for a moment and I don't know what

15    the timetable is and maybe, I am sorry, I forgot the --

16    the purported expert's name, Mr. Rochkind, when would

17    the bankruptcy make the determination, assuming you are

18    right for argument sake, when would they make the

19    decision to put him into bankruptcy?  How long does

20    that take?

21          MR. ROCHKIND:  Mr. Zada has to file a

22    response to the petition like it were a complaint

23    within 30 days.  At that point the court will set a

24    hearing.  It may or may not permit discovery, that's

25    the best answer I can give you.  So we are a ways from

                                  23

1     that.

2             MR. KRIGER:  I mean I don't know if this is

3     even alive any more.  But I am only here for two

4     reasons, Your Honor.

5             One, does he have a 5th amendment privilege

6     as to, one of the allegations by the receiver was that

7     he is not answering where the money went.  I don't

8     think there is any dispute that that's covered by the

9     5th amendment.  I don't think -- I think that is, and I

10    know this court does have some experience in that area,

11    but I think that's quite clear, he doesn't have to

12    answer those questions.  And any link in the chain of

13    evidence.

14            The other issue that is out there is the

15    motion to show cause has two requests.  One, either to

16    hold him in civil contempt or in criminal contempt.

17    And I do have some expertise in those two areas.

18            So I'd like to weigh in on that.  If there is

19    a criminal contempt or civil contempt against him

20    personally, then I would like to be here.  If

21    everything is stayed as to him personally then I don't

22    need to be here, at least as to that issue.  So, that's

23    why I'm here.  But noon is fine for me on the 14th.

24            THE COURT:  I was going to say you might want

25    to change course and plan to be here.

24

```
1          MR. KRIGER:  Okay then I will be.

2          THE COURT:  Okay.

3          MR. ROCHKIND:  Thank you, Your Honor.

4          MR. ALOIA:  Thank you.

5          THE COURT:  Thank you all.

6

7

8

9               (At 10:04 a.m. matter concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

COPY

1    R E P O R T E R ' S   C E R T I F I C A T E

2

3

4    STATE OF MICHIGAN)

5    COUNTY OF WAYNE  )

6

7       I, RICHARD JOSEPHS, RPR, CMRS, CSR-2345, Official

8    Court Reporter in and for the Third Judicial Circuit,

9    Wayne County, State of Michigan, do hereby certify that

10   the foregoing pages 1 through 26, inclusive, was

11   reduced to typewritten form by means of

12   Computer-Assisted Transcription and comprise a true and

13   accurate transcript of the proceedings taken in the

14   above-entitled matter, on Friday, April 30, 2010.

15

16

17

         Richard Josephs, RPR, CMRS, CRS-2345
18       Certified Manager of Reporting Services
         Registered Professional Reporter
19       Certified Shorthand Reporter

20

21

22

23

24

25

# EXHIBIT B

```
 1                    STATE OF MICHIGAN

 2       IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

 3

 4      SERGEI FEDOROV,

 5                Plaintiff,

 6             -vs-                 Case No. 09-018061-CK

 7      JOSEPH P. ZADA, SERGEI FEDOROV,
        EQUEST PROPERTIES, LLC, and
 8      XANDARIUS LLC,

 9                Defendants,

10             -and-

11      PEOPLES STATE BANK,

12                Intervening-Plaintiff,

13             -vs-

14      JOSEPH P. ZADA, SERGEI FEDOROV,
        EQUEST PROPERTIES, LLC, and
15      XANDARIUS LLC,

16                Defendants.
        _____/
17
```

## DEFENDANT ZADA'S MOTION FOR STAY

```
18
               PROCEEDINGS HAD in the above-entitled cause
19
        before the HONORABLE MICHAEL F. SAPALA, Judge, Third
20
        Judicial Circuit, Courtroom 1707 CAYMC Building,
21
        Detroit, Wayne County, Michigan, on Friday, May 14,
22
        2010.
23

24

25
```

1

```
 1      APPEARANCES:

 2

 3                      LOUIS P. ROCHKIND, Esq.,

 4                          On behalf of Sergei Fedorov.

 5                      JAMES VLASIC, Esq.,

 6                          On behalf of Peoples State Bank.

 7                      BENJAMIN J. ALOIA, Esq.,

 8                          On behalf of Joseph Zada.

 9                      ZENNA ELHASAN, (Limited appearance)

10                          On behalf of Sabat Zada.

11                      MARK KRIGER, Esq., (Limited appearance)

12                          On behalf of Joseph Zada.

13                      STEVEN BUQUICCHIO, Esq.,
                        TIMOTHY MONSMA, Esq.,
14
                            On behalf of Receiver Patrick
15                          O'Keefe.

16                      ROBERT WEISBERG, Esq.
                        LAWRENCE LICHTMAN, Esq., (Limited
17                      appearances)

18                          On behalf of Joseph Zada.

19
                        JAYSON RUFF, Esq.,
20
                            On behalf of Richard Mertz, David
21                          Maddox, Daniel Keczmer, Arabaham
                            Katzowitz, Eric Leon, and Anthony
22                          Leon

23

24

25


                              2
```

# T A B L E   O F   C O N T E N T S

Witness:                                          Page

^Opinion of the court.............  12, 45

# E X H I B I T S

Identification              Marked    Received

(None.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

3

```
 1                          Detroit, Michigan

 2                          Friday, May 14, 2010

 3              ---        ---        ---

 4                  (At 12:31 p.m., back on the record, all

 5                  parties present)

 6

 7              THE CLERK:  Case number 09-018061-CB, Sergei

 8    Fedorov versus Joseph Zada.

 9              THE COURT:  Hold off for a second as my

10    assistant is coping me a list of lawyers names for

11    appearance sake.

12              Okay.  For the record appearances please.

13              MR. ALOIA:  Benjamin Aloia on behalf of the

14    defendants, all of the defendants.

15              MR. BUQUICCHIO:  Steven Buquicchio on behalf

16    of the receiver, the receiver is also here in person

17    with me Mr. O'Keefe.

18              MR. ROCHKIND:  Larry Rochkind of Jaffe Rait

19    Heuer and Weiss on behalf of Sergei Fedorov the

20    plaintiff.

21              MR. MONSMA:  Timothy Monsma on behalf of the

22    receiver Mr. O'Keefe.

23              MR. VLASIC:  Your Honor, Jim Vlasic for

24    Peoples State Bank.

25              MR. ALOIA:  Your Honor, Mark Kriger on behalf
```

4

```
 1    of Mr. Zada.

 2            MS. ELHASAN:  Good afternoon, Your Honor,

 3    Zenna Elhasan on a limited appearance on behalf of

 4    Sabat Zada.

 5            MR. WEISBERG:  Good afternoon, Your Honor,

 6    Robert Weisberg and Lawrence Lichtman on behalf of Mr.

 7    Zada again a limited appearance, we have not formally

 8    entered an appearance in the matter.

 9            THE COURT:  Okay.  Here we are.

10            Anybody else?

11            MR. RUFF:  Yes, good afternoon, Your Honor,

12    Jayson Ruff a limited appearance on behalf of the

13    petitioning creditors in the bankruptcy against Mr.

14    Zada and Equest Properties LLC.

15            THE COURT:  Okay.  Gentlemen.  Where in the

16    world do we begin with this mess.

17            MR. ALOIA:  Your Honor --

18            THE COURT:  It is an extraordinarily

19    interesting brief I received yesterday from the

20    receiver, painting a slightly different picture than

21    the last time we were here.  So go ahead.

22            MR. BUQUICCHIO:  Can I just summarize some

23    issues for the court, Your Honor, at least the hearings

24    here today.

25            THE COURT:  You may.
```

5

```
 1              MR. BUQUICCHIO:  If you remember Your Honor,

 2     there were three hearing pending at the last time we

 3     visited on April 30th, 2010.  Those were the motions on

 4     receiver's motion for Mr. Zada to show cause why he

 5     should not be held in contempt.  The receiver also had

 6     a second motion spending that day for the payment of

 7     expenses.  And Mr. Fedorov had a motion on compelling

 8     Ms. Sabat Zada her attendance at a deposition.

 9              Prior to those hearings on the eve of those

10     hearings, a bankruptcy involuntary petition was filed.

11     The court adjourned those hearings until today.

12              In the interim though, Your Honor, Your Honor

13     ordered Mr. Zada's counsel to prepare a briefing as to

14     whether or not the stay would have any negative impact

15     on our hearings today.

16              And just for ease of administration, I think

17     we are not disputing until such time that there is an

18     order dismissing the bankruptcy, which we feel will be

19     coming very shortly in light of the fact of the

20     representations made to the court about the dismissal,

21     those hearings, we can put off the hearings on the

22     motion for contempt -- on the motion for compel on Ms.

23     Sabat Zada and for the motion for expenses.

24              And today I believe the only motions we are

25     hearing is as to whether or not the stay is in effect.
```

                                    6

1    And if you find that it is not in effect, Your Honor,

2    then we move on with the receiver's motion for

3    contempt.

4         THE COURT:  When would you foresee that the

5    bankruptcy would be dismissed, the petitions?

6         MR. BUQUICCHIO:  Well, Your Honor, and

7    Mr. Rochkind might be the better person to speak to

8    about this but my understanding here and in fact,

9    perhaps the creditor's counsel can speak to this.  They

10   advised the court in open court yesterday of their

11   dismissal.

12        And since that time, a dismissal, a motion

13   for dismissal has in fact been filed by the petitioning

14   creditors and an expedited motion for a dismissal has

15   been filed on behalf of Mr. Fedorov.  The receiver will

16   concur in Mr. Fedorov's motion and file that as well.

17        As for the timeframe, Mr. Rochkind requested

18   an expedited hearing and he might able to advise the

19   court when that might be.

20        THE COURT:  Mr. Rochkind.

21        MR. ROCHKIND:  Bankruptcy Judge Rhodes at the

22   conclusion of the hearing yesterday invited any

23   creditors to file a motion said he would look kindly on

24   a motion for expedited hearing given his procedures,

25   and Mr. Weisberg and Mr. Lichtman are experienced in

7

```
 1    that court as well, I wouldn't be surprised to see a
 2    hearing next week.
 3         MR. LICHTMAN:  Your Honor, if I may, Lawrence
 4    Lichtman on behalf of Mr. Zada.
 5         I was present in bankruptcy court yesterday,
 6    at the hearing that has been referred to on behalf of
 7    Mr. Zada and Equest Properties.  And just to make
 8    clear, so this court has the proper context, the
 9    purpose of yesterday's hearing was merely to address
10    two separate motions for interim trustees, which the
11    petitioning creditors and the respective involuntary
12    cases of Mr. Zada and Equest Properties had filed.
13         Those motions were withdrawn.  There was --
14    there were attempts made to make certain other motions
15    on an oral basis which the bankruptcy judge rejected.
16         So, yesterday's hearing did not concern a
17    motion that was pending before the bankruptcy court at
18    that time concerning either the dismissal of the case,
19    or anything having to do with relief from the stay.
20         MR. ROCHKIND:  I am not sure what the
21    pertinence of all that is, I made an oral motion as I·
22    am permitted to do at yesterday's hearing to dismiss.
23    The judge said he would not consider it because it
24    hadn't been noticed out.  That's when he invited the
25    creditors if you like to file such a motion we did
```

8

1  yesterday and to ask for an expedited hearing.

2        THE COURT:  We can assume the bankruptcy is

3  going to be dismissed.

4        MR. ROCHKIND:  The petitioning creditors

5  would like to have it dismissed, the receiver would

6  like to have it dismissed, I believe that's a fair

7  assumption.

8        MR. RUFF:  That's accurate, Your Honor.

9        THE COURT:  All right, to take the

10  conservative course of action here, we will hold off on

11  any proceedings here that are impacted by the current

12  stay.

13        MR. BUQUICCHIO:  Yes.

14        THE COURT:  And we have some dispute over

15  what we can do.

16        MR. BUQUICCHIO:  Yes.

17        THE COURT:  But that at a minimum you would

18  agree, by you I mean the receiver, and Mr. Fedorov

19  would agree that the issue of the subpoena with regard

20  to Ms. Zada and payment of the receiver's expenses we

21  will necessarily hold off until the dismissal of the

22  bankruptcy is in effect entered.

23        MR. BUQUICCHIO:  Yes, Your Honor that is

24  precisely right.

25        MR. ROCHKIND:  Yes.

9

```
 1              THE COURT:  So that would leave the order to
 2     show cause.
 3              MR. BUQUICCHIO:  Yes, Your Honor.
 4              THE COURT:  And what else?  That's it.
 5              MR. BUQUICCHIO:  Mr. Aloia filed a motion for
 6     a stay as to all proceedings.
 7              THE COURT:  Right.
 8              MR. BUQUICCHIO:  We responded asserting Your
 9     Honor with plenty of legal authority that the contempt
10     procedures are in no way impacted by the automatic
11     stay.
12              THE COURT:  Let me hear from Mr. Aloia first
13     since it is his motion.
14              MR. ALOIA:  Thank you.
15              THE COURT:  All the rest of you what to take
16     seats and get comfortable, all right.  Not too
17     comfortable.
18              MR. ALOIA:  I think we have been able to
19     ferret out a lot of the issues that were addressed in
20     my brief as to whether on the filing of an involuntary
21     petition an automatic stay is in effect.
22              We also filed our motion as to the remaining
23     Zada entities and whether the receivership should be
24     stayed as to them.  And this court clearly has the
25     ability to determine the extent of the stay.  We
```

10

```
 1    believe that any action at this point, under the
 2    receivership orders is an action to collect a debt
 3    which is under this judgment.
 4            THE COURT:  Those entities are for the record
 5    again.
 6            MR. ALOIA:  If I may, Zada Enterprises LLC.
 7            THE COURT:  All right.
 8            MR. ALOIA:  There is two Xandarius, there is
 9    one in Michigan, one in Florida.  And there is Equest
10    Properties which is -- there has been an involuntary
11    petition filed as to Equest Properties.
12            THE COURT:  We are not concerned with Equest
13    at this point.
14            We are concerned with the other three and
15    they are all LLCs, are they not?
16            MR. ALOIA:  Yes, they are single member LLC
17    Your Honor.
18            THE COURT:  Well whether it is single member
19    or a hundred member I don't think makes a difference.
20    Go ahead.
21            MR. BUQUICCHIO:  Your honor, on clarification
22    on Equest we are concerned with Equest because they can
23    still be held in contempt pursuant to the authority.
24            THE COURT:  With regard to the contempt, yes.
25            MR. BUQUICCHIO:  Yes.
```

11

1      THE COURT:  All right.  Go ahead.

2      MR. ALOIA:  Well, I'll going to address first

3    the breadth of my motion as to the stay.

4      Let me ask you this, Your Honor, just

5    procedurally.  My motion asks for a stay as to the

6    receivership and all proceedings under the

7    receivership, as to all the remaining entities, okay.

8      In response, and we -- our position is that

9    it includes a civil and criminal contempt.  In

10   response, they filed motion or response late yesterday

11   I got it at 4:35, which said that the civil and

12   criminal contempt proceedings should proceed.

13     Now, I think we should address both of those

14   issues.  First, this court has the jurisdiction to

15   administer a stay over all of those single member LLCs

16   which are property of the bankruptcy estate.

17     And our position is that any action under the

18   receivership order would directly effect the value of

19   those membership interests that Mr. Zada has.  And

20   would adversely impact the property of the bankruptcy

21   estate.  And this court has jurisdiction to be able to

22   determine the effect of that stay.

23     In fact there is a case, what, what the

24   receiver didn't cite is any 6th circuit law as to the

25   effect of the stay especially when it comes to civil

12

1    contempt proceedings.  And there is this interesting

2    case called NLRB versus Zerwolski (sp) and I have a

3    copy of that for the court.  Once we received the

4    response from the receiver I have a copy of the case

5    for the court's view, but basically it states in the

6    6th circuit it has been held the bankruptcy courts do

7    not have exclusive jurisdiction to determine the

8    applicability of an automatic stay.

9          And that the courts which -- where the

10   litigation is pending has the jurisdiction to determine

11   not only its own -- in its own jurisdiction but as to

12   the precise questions whether the proceeding before it

13   is subject to the automatic stay.  So, this court has

14   the jurisdiction to look at this.

15         So I want to make that clear.  Because there

16   has been representations made last week that the

17   bankruptcy court is the only court which has the

18   ability to determine that.

19         So that being said, we believe because these

20   membership interests would be adversely affected by any

21   pending action of the receiver against those single

22   member entities we believe that stay also applies to

23   the property of the stay which are these entities.

24         There is case law which we cited that if it

25   indirectly affects the value of this membership

13

```
 1    interest, the proper determination would be to either
 2    effectuate the stay or issue an injunction which would
 3    preclude the receiver from taking any adverse action to
 4    collect a debt which would affect the bankruptcy
 5    estate.
 6              THE COURT:  So these entries are part of the
 7    bankruptcy estate?
 8              MR. ALOIA:  Our position is this.  He has a
 9    membership interest, the trustee -- conceivably let's
10    say this bankruptcy proceeds, the trustee is going to
11    determine what the value of that membership interest.
12    The value of take membership interest is determined by
13    the assets of this corporation, it's business, it's
14    enterprise.  This receivership controls Joseph Zada's
15    actions as a member in the assets.
16              In the event this receiver in an effort to
17    collect a debt for Sergei Fedorov, People's State Bank
18    liquidate assets, not that any have been found to date,
19    but liquidate assets of those membership -- of those
20    single member entities that adversely affects his
21    membership interests in those entities.
22              Our position is that the purview of that is
23    with the bankruptcy court at this time.  And the
24    prudent action would be to stay this action as to
25    Fedorov and his entities until a determination on the
```

14

1    bankruptcy can be made.

2         THE COURT:  Let me hear a response.

3         MR. ALOIA:  And I just want to address this,

4    after the civil contempt proceedings because we have a

5    case which distinguishes their position.

6         THE COURT:  Go ahead.

7         MR. BUQUICCHIO:  Your Honor, I'm not quite

8    sure where Mr. Aloia is going with those arguments

9    frankly.  The reality is none of the entities that he

10   seeks a stay against in this latest argument are in

11   bankruptcy.

12        Mr. Zada filed an affidavit that there are no

13   assets, there is really no bearing upon the bankruptcy

14   estate whatsoever.

15        And the fact that there is no filing on that

16   bankruptcy gives this court all the power in the world

17   to say we're not affected by that stay with respect to

18   those even entities.  Period.

19        That's our position.  We briefed it.  I am

20   not going to reiterate it for the court.  It is a -- it

21   is a stretch at best to enable entities that are not in

22   bankruptcy, to allow to enjoy the stay.  It is just --

23   it shouldn't happen Your Honor that's not the purpose

24   of this --

25        THE COURT:  Mr. Aloia, frankly I miss your

15

1    argument.  I don't understand it.  I heard it, I read

2    your pleadings but the request for a stay with regard

3    to those entities is denied.  Next issue.

4         MR. BUQUICCHIO:  Your Honor, the issue is now

5    on the motion for contempt against Mr. Zada and Equest.

6    We have briefed the issue, Your Honor.  I am not going

7    to waste the court's time reiterating what we have

8    briefed.

9         Suffice it to say, you have plenty of

10   authority here regardless of the stay to proceed with

11   these contempt proceedings both in the civil context

12   and the criminal context.

13        THE COURT:  All right.  List for me the

14   conduct that constitute the contemptuous acts in this

15   case.

16        MR. BUQUICCHIO:  Gosh, how much time do we

17   have, Your Honor, and I don't say that --

18        THE COURT:  I know but we have to be careful.

19        MR. BUQUICCHIO:  I understand that, Your

20   Honor.

21        The reality is from the get go, Mr. Zada has

22   been uncooperative, and has been unwilling to provide

23   any information as to the whereabouts of tens of

24   millions if not hundreds of millions of dollars.  He

25   has taken this money in and it just has vanished in

16

1    thin air according to him.

2         He needed to provide the receiver with the

3    whereabouts of his assets or assets wherever situated

4    for whatever entity, okay, he needed to provide that

5    information to the receiver, he has not.

6         They provided documents that are of some

7    assistance, but no assistance whatsoever in finding

8    where assets are.  Meanwhile, Your Honor, the receiver

9    keeps scratching his head because we have an Army of

10   lawyers here on behalf of Mr. Zada, that are apparently

11   getting paid, okay.  This is an outrage.

12        The receiver has been doing this for over

13   nine months, hasn't been paid a time dime.  And Mr.

14   Zada has the gull to come in here with an Army of

15   lawyers, that he is paying, okay, and will not tell us

16   where he is getting the money.

17        That is ridiculous, that is only one of the

18   violations Your Honor.

19        Perhaps the most egregious violation is that

20   he sued the receiver in Florida.  He did so without

21   leave of this court.  He did so in clear contradiction

22   of the court order.  In fact, Your Honor, this should

23   not even be about the conduct, because it is

24   indefensible.

25        Your Honor can take judicial notice of the

17

1  filing of that complaint, and that in and of itself is

2  a violation of the order. Okay, this should be just

3  purely on penalty, Your Honor, not anything else.

4  But Mr. O'Keefe is here and is willing to

5  testify as to all the other things that Mr. Zada has

6  done. But I'll give the court a couple of more

7  examples.

8  There is a property in Florida that the

9  receiver is working to market and liquidate. He is

10  working with the secured creditors Sterling Bank and

11  Peoples State Bank.

12  Well, Mr. Zada is going around telling folks

13  in that area that the receiver has no power to do

14  anything with respect to that -- with respect to that

15  property. Okay. That's seriously thwarting the

16  receiver's efforts to recognize some funds for the

17  estate.

18  He's going in around town doing all that kind

19  of stuff. Meanwhile, he is, on his own admission,

20  negotiating leases on behalf of himself and Equest when

21  you clearly has no authorization to do that. Okay. He

22  is enlisting his attorney, his paid known in Florida to

23  send cease and desist letters to the receiver's agents

24  telling them that they need to turn over the keys to

25  the property, clear contradiction of the order.

18

Frankly, it was a violation of the order to

2    even hire an attorney on behalf of Mr. Zada and the

3    Equest Properties, since there is a receiver over --

4    well over Equest, since there is a receiver over that

5    entity anyway.

6          So these are just things that are peppered

7    every day and we find out more things every day.  Mr.

8    Zada has been seen in and around town in Michigan and

9    Florida, spending money, living the high life.  Okay.

10   Where is that money coming from?

11         Okay.  He says in his affidavit, and frankly

12   Your Honor, I don't think Mr. Zada can hide behind the

13   5th amendment any more.  He has filed an affidavit that

14   puts all of these things at issue and in controversy.

15   He says he has no income, and he says is not hiding

16   money from the estate.

17         The receiver and the plaintiff have full

18   authority now to test that testimony.  He can't stand

19   behind the 5th Amendment any more.

20         THE COURT:  Let me reflect here for a moment.

21         With regard to the proceedings in Florida,

22   are you requesting among other things that this court

23   issue an order prohibiting or requiring Mr. Zada to

24   dismiss or withdraw that case in Florida?

25         MR. BUQUICCHIO:  First off, Your Honor, there

19

1    was an order that prevented him doing that in the first

2    place, it is called the receivership order. He never

3    sought leave of this court to do anything with respect

4    to that. And meanwhile he brought another lawsuit

5    trying to determine the receiver's powers. Okay. This

6    is the court of jurisdiction in which he needs to do

7    that, not Florida.

8          So, there was an order, but now we sought in

9    our motion to show cause we asked for an injunction

10    against him prosecuting in Florida for any further

11    action. And we would seek a permanent injunction in

12    that regard that he cannot file or entertain any

13    litigation against the receiver in Florida or any other

14    jurisdiction.

15          MR. ROCHKIND: Your Honor may I?

16          THE COURT: You may.

17          MR. ROCHKIND: The plaintiff joined and

18    concurred in that motion. If I may respond to your

19    question and your comments.

20          THE COURT: Yes.

21          MR. ROCHKIND: The violations and contempt of

22    the order is on the record before you. The order --

23    there should be no question that the order has been

24    violated by Mr. Zada. There isn't. The order

25    restrains Zada from taking "any action whatsoever"

1  regarding that Equestrian facility in Florida.  He did

2  take an action; he sued, he sent letters.

3        The order requires Zada to quote "yield

4  possession and control" of the equestrian facility to

5  the receiver.  He hasn't done that.  How do I know he

6  hasn't done that?

7        Because exhibit O, to Zada's response in this

8  court is a letter from his Florida lawyers, you can

9  look at it but here's the quote.  In that letter, "we

10 demand that you immediately cease and desist all

11 attempts to list the property or sell the property or

12 enter upon the property.  All keys to the property

13 should be returned to undersigned counsel for Mr. Zada

14 and Equest Properties LLC."

15       The receiver order also authorizes the

16 receiver to sell the facility and requires Zada to

17 cooperate with that.  He hasn't done that.  He has done

18 the contrary.

19       So, you can argue maybe about what should be

20 the remedy.  There can't be any argument about the

21 violation.  And, yes, the plaintiff is asking that you

22 once again, although I have had a judge say to me I

23 have ordered it once and he didn't do it what's the

24 good of doing it a second time, and that is always a

25 good question.  But we would ask that you specify and

21

1    clarify and say to Mr. Zada, dismiss that action,

2    you're not allowed to do it.

3         Now it may be that Mr. Zada believes he

4    shouldn't be so enjoined.  We learn in law school that

5    all court orders must be obeyed until changed.  There

6    isn't anything perhaps more important to our legal

7    system.

8         If Mr. Zada is of the view that this is

9    inappropriate, he just has to come back and file a

10   motion to reconsider or amend the order.

11        But in the meantime, the only reason that

12   court orders in our country work is that people respect

13   them.  If we all woke up yesterday and said we didn't,

14   then they wouldn't.  Once an order is violated it's got

15   to be sanctioned.

16        THE COURT:  What remedy is being sought here

17   other than the injunction referenced or the order to

18   dismiss the Florida case?

19        MR. ROCHKIND:  The remedy that the plaintiff

20   would like to see, is the demand to cease and desist

21   the activities in Florida the litigation, the demand

22   letters, et cetera.

23        Secondly, an order that Zada turn over the

24   necessary records to the receiver and that he be placed

25   in jail until he does so.

22

1      Now, among the -- I will advise the court,
2    that when he took his deposition, twice, I read that
3    again yesterday, he did plead the 5th Amendment 79
4    times.  While he is happy to hire these lawyers, what
5    he refused to say was did you transfer any property off
6    shore?  Who is supporting you today?  Who is paying
7    your lawyers?
8      So it's very easy for Zada's counsel to say
9    well none of this is relevant it doesn't matter, we
10   have no idea, he won't answer.
11     MR. BUQUICCHIO:  And Your Honor, as far as
12   the other remedies, the receiver -- the receiver would
13   like to know the sources of income used to pay his
14   attorneys.  That is only fair.  He has an Army of them
15   here today, Your Honor.  And as a penalty, the receiver
16   should also be paid his costs and fees.
17     THE COURT:  You are assuming these lawyers
18   are not working pro bono.
19     MR. BUQUICCHIO:  I'm assuming that's a safe
20   bet Your Honor, yes.
21     MR. ROCHKIND:  I have known Mr. Weisberg for
22   25 years and I am prepared to testify he is not working
23   pro bono.
24     MR. BUQUICCHIO:  Your Honor, we think it not
25   only a just penalty given the facts here, but also an

                          23

1  equitable one, that he pay the receiver's fees and

2  costs here.

3  The receiver has not had one dime paid to him

4  for all of his hard work, not one dime. And meanwhile

5  he is funding the investigation on his own dime. That

6  is ludicrous. Meanwhile, Mr. Zada hires all of these

7  lawyers to do his bidding.

8  THE COURT: Well, the payment of the receiver

9  that's the one motion we have to hold off.

10  MR. BUQUICCHIO: No, no. This would be --

11  we're seeking -- the motion to pay the receiver's

12  expenses deal with a very specific amount dealing with

13  counsel hired in Florida to deal with the lease of the

14  Equest Property and with some investigative services

15  used here --

16  THE COURT: That's the ten thousand --

17  MR. BUQUICCHIO: -- here in Michigan. That's

18  the ten thousand.

19  THE COURT: -- number.

20  MR. BUQUICCHIO: What we are asking for

21  separately the receiver be paid fees and costs since

22  the inception of this case, since the contemptuous

23  behavior started since the inception of the

24  receivership, as a penalty. If he can pay his lawyers,

25  he should be able to pay the receiver that has been

24

1     appointed for the benefit of his creditors.  It is just

2     that simple.

3              THE COURT:  Okay.  Response.

4              MR. KRIGER:  I have if I may, Your Honor,

5     some response on the contempt issue.  And we can't

6     conflate the civil versus the criminal contempt.  Let

7     me speak first to the criminal contempt.  This court,

8     it is premature for this court to have any ruling on a

9     criminal contempt because he has a right to due

10    process.

11             So all criminal contempt is very clear.  He

12    has got all the rights he would have in a normal

13    criminal trial save the right to a jury trial.  He has

14    the right to be represented by counsel, he has the

15    right to confront the witnesses against him, he has the

16    right to subpoena witnesses on his own behalf.  So if

17    the court is even going to entertain any kind of a

18    criminal contempt it needs to be put off to another

19    day.  The law is very clear on this and I am happy to

20    brief it if the court would like.

21             But I don't see how in any way, the

22    litigation in Florida is -- could ever be considered

23    criminal.  In order for contempt to be criminal it must

24    be willful.

25             If you look at page seven of the receiver

25

1    order it reads as follows:

2            "It is further ordered that accept by leave

3    of this court or as otherwise permitted by law."  "Or

4    as otherwise permitted by law."

5            The counsel in Florida was given a copy of

6    that receiver -- that order appointing the receiver and

7    the powers of the receiver, and despite that he said

8    that under Florida law this litigation is proper.  In

9    other words, it's as permitted by law.

10           How Mr. Zada could -- could ever be in

11   willful contempt when he relies on the advice of an

12   attorney, who has been -- who has reviewed the

13   receiver's order is beyond me.  It simply cannot be

14   willful.  He relied on the advice of counsel which is a

15   defense to any criminal charge so long as there is full

16   disclosure.

17           And there was, because as -- the receiver's

18   order was made part of the lawsuit down in Florida.

19   And all the lawsuit down in Florida does, as I

20   understand it, and I am not a civil lawyer and perhaps

21   Mr. Aloia can speak to this better than I can, is to

22   determine what rights the receiver has under Florida

23   law.

24           So, a lawyer has made a determination that

25   this lawsuit can proceed as permitted by law.  So as to

26

1    the criminal contempt, Your Honor, I think it is far

2    from clear that there is any violation despite what Mr.

3    Rochkind says, and even if the court believed there

4    could be I have the right to bring in the lawyer from

5    Florida.  A right to present witnesses.

6        THE COURT:  What is your response with regard

7    to the claim that Mr. Zada has failed to provide full

8    disclosure with regard to his records, with regard to

9    indicating the source of income to pay lawyers.

10        MR. KRIGER:  I am happy to speak to those.

11        THE COURT:  Go ahead.

12        MR. KRIGER:  As to those issues, Your Honor,

13    clearly where the money is, whether there is offshore

14    accounts is protected by the 5th Amendment.  Under

15    Hoffman versus United States, the 5th Amendment can be

16    claimed if there is any link in the chain of evidence.

17        There is currently a grand jury investigation

18    going on in the Southern District of Florida, Mr.

19    LaRene and I, and counsel in Florida, have met with the

20    Assistant U.S. Attorney and is spearheading their

21    investigation along with the FBI, we have all -- Mr.

22    LaRene and I have also spoken with Mr. Karen Reynolds

23    the Assistant United States attorney in the Eastern

24    District of Michigan, who says there is a pending grand

25    jury investigation in the Eastern District of Michigan,

27

```
1    although it is in its infancy, it is early on.  The one

2    in Florida is far more developed.

3             And we are -- we have been given the courtesy

4    by that Assistant to go down there again towards the

5    end of the summer and review what's there.

6             THE COURT:  Well what about --

7             MR. KRIGER:  So anything --

8             THE COURT:  -- what about the assertion by

9    plaintiff here that Mr. Zada has provided an affidavit,

10   asserting certain facts, and they therefore have a

11   right to impeach him, as it were, with regard to the

12   assertions made in the affidavit with regard to income.

13            MR. KRIGER:  Well I don't -- I don't think he

14   waives any 5th Amendment privilege, Your Honor.  And he

15   can always invoked the 5th Amendment privilege.  I

16   think the law is very clear, and again I would be happy

17   to brief this for the court but he can assert the 5th

18   any time it would tend to incriminate himself.

19            MR. ROCHKIND:  Your Honor --

20            MR. KRIGER:  And he has that right.

21            THE COURT:  All right.

22            MR. KRIGER:  And I understand that sometimes

23   that can cause problems for the plaintiff in this case,

24   but the constitution trumps --

25            THE COURT:  No, I understand.
```

28

```
 1          MR. ROCHKIND:  Your Honor, just if I may

 2     say --

 3          MR. KRIGER:  Let me.

 4          THE COURT:  Let the defense have --

 5          MR. ROCHKIND:  I'm sorry, I thought he was

 6     done.

 7          MR. KRIGER:  As to any documents that have

 8     not been provided, at a minimum I would think he would

 9     be entitled to notice as to what documents have not

10     been provided.  There were eight banker boxes --

11          THE COURT:  That is a Catch-22 in a sense.

12     How do they know necessarily what documents they are

13     going to find.

14          MR. KRIGER:  Well, he has signed -- he is

15     prepared to sign an affidavit that he has complied.

16          MR. ALOIA:  Your Honor, let me explain and,

17     because I have been through this from the beginning.

18          We met with the receiver less than a week

19     after this order was entered.  We met with the

20     receiver, we disclosed as to where all of his current

21     assess where, his homes, any jewelry, his storage

22     units.  We gave them documents, we gave them deeds.

23          They said -- we admitted at that point we

24     needed to get more information together and we did

25     that.  We supplied seven banker boxes of documents.
```

29

1     The receiver came to my office, spent three hours

2     looking there, copied what they wanted.

3     Mr. Alter then ordered a copy of those and

4     what they said in their pleadings is this, by virtue of

5     that production they have subpoenaed 20 lending

6     institutions, they have subpoenaed all of his credit

7     cards, they have subpoenaed third parties. They have

8     gotten a release of his tax returns by Mr. Zada.

9     He turned over a computer drive and said

10    there were financial records on here. I don't know

11    what is on here, I don't know if you can recover it,

12    here it is.

13    They have admitted they have gotten Quick

14    Books documents. We have turned over everything. We

15    have not heard one complaint until the filing of this

16    motion. That happened in October. We submitted to a

17    creditor's exam. We turned over the release of the tax

18    documents and the computer disk. We haven't heard one

19    complaint until the filing of this motion, that Mr.

20    Zada hasn't complied in turning over documents. He

21    turned over everything he has, Your Honor.

22    MR. BUQUICCHIO: Your Honor, that is a

23    misrepresentation to this court. Pure and simple. We

24    have complained ad nauseam, okay, Your Honor. We have

25    complained nauseam.

30

```
1          THE COURT:  Let's stop for a second.  I am

2     try to ferret my way through all this.

3          Mr. Kriger has made the argument with regard

4     to the action by Mr. Zada in Florida that he is

5     permitted to do so because of the certain language

6     cited.

7          MR. KRIGER:  I am.

8          THE COURT:  Cite the language again.

9          MR. KRIGER:  The language says, it is further

10    ordered that the -- that except by leave of this court

11    or as otherwise permitted by law.

12         MR. ROCHKIND:  Or read --

13         MR. KRIGER:  Or as set forth in this order

14    during the pendency of the receivership Zada and/or any

15    of the Zada entities and all persons, creditors,

16    entities are restrained.

17         THE COURT:  Right.

18         MR. KRIGER:  Now, Your Honor, they may

19    dispute whether or not it's permitted by law.  A lawyer

20    in Florida who looked at that order made a

21    determination, I assume in good faith that this lawsuit

22    could proceed.  And there is no dispute by anybody in

23    this courtroom that a lawyer -- the lawyer in Florida

24    reviewed this order.

25         THE COURT:  Okay.  Does not this court have
```

31

1      discretion to delete that language?

2              MR. KRIGER:  If, upon -- perhaps upon motion

3      but I don't think the court ought to.  I think if -- if

4      you cannot proceed under Florida law, then the court

5      shouldn't enter an order interpreting Florida law.

6              MR. BUQUICCHIO:  I can clear this up very

7      quickly, Your Honor.

8              MR. ALOIA:  I would like to as well.

9              MR. BUQUICCHIO:  We domesticated the order to

10     address that very issue.  We domesticated, we hired

11     local counsel, we domesticated it.  It is given -- your

12     order is given full faith and credit under Florida law

13     and our attorneys said you have to ability to enforce

14     that order.  Period.  Okay.

15             This is a red herring and nothing more than

16     someone who is boxed into a corner trying to find an

17     excuse to get out from that corner.  Regardless of the

18     lawsuit, let's look at all these other things that Mr.

19     Zada does.

20             I am sure he has explanations for those, as

21     well.

22             What Your Honor has to do is determine

23     whether or not he violated the orders.  And I think we

24     have shown, clearly shown that he has done so.

25             All of this other stuff is just red herring,

32

1    smoke and mirrors, Your Honor, I guaranty you.

2              THE COURT:  Mr. Aloia.

3              MR. ALOIA:  Your Honor, we have to take a

4    step back.  First of all, what's clear under the law

5    and they haven't responded to this, is that the court

6    can order a receiver, the court can order a receiver

7    over his property but that ends at the boundary lines

8    of Michigan.

9              And what happens is that this court has no

10   jurisdiction over property in Michigan.  The Emmens

11   case is clear, and the receivership order along with

12   those properties this court does not have jurisdiction

13   over that property.

14             THE COURT:  But this court has jurisdiction

15   over the person Mr. Zada.

16             MR. ALOIA:  That's correct.  That's correct,

17   Your Honor.

18             So, what, and I want to paint the big picture

19   though.  Due to that, and Mr. Zada's counsel has

20   advised him that the receivership order has not been

21   properly domesticated in Florida, and due to the fact

22   that that has not occurred, that they have no business

23   taking action in Florida and over his property.

24             Based on the advice of his counsel the proper

25   place to contest the effect of that receivership order

                              33

1    in Florida would be Florida.  And that's why that was

2    done.

3         Now, there is a couple of things I want to

4    point out on how this order is being used by the

5    receiver and we believe it's unconstitutional.

6         Mr. Zada is being sued by a creditor down

7    there as in Sterling Bank, for not only a foreclosure

8    but a deficiency.  The receiver would like this court

9    to interpret that order that he cannot defend himself

10   because it's litigation against a claim of foreclosure

11   or deficiency against him.

12        He hired his own counsel.  The receiver did

13   not step in in that and intervene and he say --

14        THE COURT:  Let me interrupt you.  What about

15   that situation?

16        MR. BUQUICCHIO:  That's not true, Your Honor.

17   We are preventing Mr. Zada from defending himself in

18   anything.  We are trying to seek Mr. Zada -- preventing

19   Mr. Zada from pursuing the receiver, that's it.

20        MR. ROCHKIND:  Your Honor, if I may before it

21   gets lost.

22        THE COURT:  You may.

23        MR. ROCHKIND:  I ask the court to try to keep

24   its eye on the ball, because there are a lot of

25   comments being made.  I am holding the affidavit in my

34

1    hands, it's exhibit A to Zada's response to the

2    contempt motion the one that says he didn't violate the

3    order.  It doesn't say that.  It doesn't address it.

4         What this affidavit says is that in this

5    lawyer's opinion, the receiver does not have authority

6    to foreclose the property in Florida.  Doesn't address

7    whether Mr. Zada violated this court's order by the

8    actions that he undertook.

9         What it says is, and you can read, it's right

10   here, says he filed a motion and he got authority to

11   file a counterclaim.  Says that as a matter of Florida

12   law a Michigan receiver is not authorized to do the

13   things that this receiver is doing and that's his

14   opinion.

15        No where does it address the fact that -- it

16   doesn't address contempt.  Doesn't address the order.

17   It is just not right to say that he relied on an

18   opinion of Florida counsel that he could violate the

19   order.  He didn't.  It is not in there.

20        Now, that's number one.  Number two, I want

21   the court to be clear when I said and Mr. Buquicchio

22   said that Mr. Zada had said certain things in an

23   affidavit and we should have the right to cross examine

24   him.  I want to court the hear what those are, because

25   they are important.

1      I'm looking at exhibit B to Zada's response.

2  Paragraph three of Zada's affidavit, "the equestrian

3  facility is currently my only source of income to live

4  on and it is my residence," close quote.

5      So is that the way the 5th Amendment works?

6  You get to put at issue in play, I only have this

7  source of income so I can't do anything else, and then

8  when somebody says to you what is your source of income

9  you say 5th Amendment.  Really unbelievable to me.  I'm

10  no criminal lawyer but that's odd.

11      Here's the second quote, paragraph 28 of that

12  affidavit, "all expenses paid to counsel to defend and

13  litigate claims on my behalf in other cases have been

14  paid directly by others."

15      So we said to him in his creditor's exam, who

16  were the others?  5th Amendment.  Where did they get

17  the money?  5th Amendment.  Could it possibly be the

18  money came from you originally?  5th Amendment.

19      This is simply the continuation of a

20  confidence scheme and the latest intended victim is

21  you.

22      THE COURT:  Okay.  Now we are going to

23  resolve a couple of issues now.  I don't want to -- I

24  am not sure I want to hear any more now.  By these

25  comments I may ask some, how much is the receiver owed

36

```
 1        for fees and costs?

 2              MR. BUQUICCHIO:  We don't have specific

 3        numbers, Your Honor, but we can provide those, we may

 4        have an estimate.

 5              THE COURT:  Give me an estimate.

 6              MR. BUQUICCHIO:  At this point Your Honor we

 7        have approaching $300,000.

 8              THE COURT:  I am taken aback a little bit by

 9        the number.

10              MR. BUQUICCHIO:  I can add some context if

11        you want, Your Honor.

12              THE COURT:  No, because I am prepared to

13        order Mr. Zada to pay those fees, if not forthwith

14        within a reasonable period of time.  I am prepared to

15        do that.  Now --

16              MR. BUQUICCHIO:  Your Honor --

17              THE COURT:  Yes.

18              MR. BUQUICCHIO:  -- can I consult with my

19        client for one moment?

20              MR. ALOIA:  We have to address one issue Your

21        Honor just to make sure we are clear.

22              MR. ROCHKIND:  Hang on a second until we have

23        all lawyers back at the bar.

24              MR. BUQUICCHIO:  Your Honor, despite the fact

25        that these are north of $300,000 or just approaching
```

37

1     $300,000 and we have sufficient backup for that.    The
2     receiver said $150,000 would be acceptable to him in
3     regard to -- and that includes not on his fee --
4                     You need a glass of water?
5                     MR. ALOIA:  No, I am dry, sorry.
6                     MR. BUQUICCHIO:  Not only his fees, his
7     representatives and agents, we have counsel in Florida,
8     there are certain other expenses.
9                     THE COURT:  I would ask that you prepare an
10    affidavit that includes all of those costs and fees.
11    As we sit here I'm thinking about asking all of you
12    whether you can all return on Wednesday and/or
13    Thursdays of next week so we can finalize the number.
14                    When Mr. Kriger can prepare in writing a
15    response to the issues that have been raised with
16    regard to 5th Amendment, how it applies here, if it
17    does applies within the context of the affidavit
18    referenced, that's critical.
19                    MR. KRIGER:  The --
20                    THE COURT:  The other side will have a chance
21    the prepare as well.
22                    I am going to enter an order today that will
23    require Mr. Zada to stop and dismiss the Florida
24    action.  To stop all of the affirmative actions that he
25    has taken in Florida.  And give me the list, because it

38

```
 1    it going to be included within the order.

 2              MR. BUQUICCHIO:  Okay.  I have a proposed

 3    order that asks for everything, you can strike as you

 4    need Your Honor.

 5              MR. ALOIA:  Your Honor, we need to address an

 6    issue before the court rules just to make sure

 7    procedurally.

 8              THE COURT:  All right.

 9              MR. ALOIA:  There's a lot that happened and

10    it happened fast.  In response -- what we need to make

11    clear is the court ruling that he is in civil contempt

12    or criminal contempt, because we have case law and

13    counsel will -- bankruptcy counsel would like to

14    address that, that this court cannot proceed on civil

15    contempt in any action to collect a debt, as long as

16    the bankruptcy stay is in effect.

17              MR. BUQUICCHIO:  This is not an action to

18    enforce it is an.

19              MR. KRIGER:  Can we finish -- can we

20    finish --

21              MR. BUQUICCHIO:  Hold on a second --

22              MR. KRIGER:  Let me finish our position --

23              MR. BUQUICCHIO:  -- it's an action to enforce

24    this court's orders.

25              THE COURT:  Hold on now.
```

39

1       MR. BUQUICCHIO:   That's what this is all
2   about.
3           THE COURT:   I agree.
4           MR. BUQUICCHIO:   Let's not lose sight.
5           THE COURT:   I agree.
6           MR. ALOIA:   Your Honor --
7           THE COURT:   Appeal this court if you chose to
8   do so.   That's going to be the ruling.
9           MR. WEISBERG:   Can we make a record Your
10  Honor, respectfully.
11          THE COURT:   Go ahead.
12          MR. WEISBERG:   The issue here is this, Mr.
13  Kriger has addressed the criminal contempt issue.   I
14  assume based on the court's directive to have Mr.
15  Kriger to brief certain issues that we are not imposing
16  any criminal contempt sanctions on Mr. Zada today,
17  correct?
18          THE COURT:   Correct.
19          MR. WEISBERG:   So my --
20          THE COURT:   My concern with Mr. Kriger was
21  with regard to the affidavit specifically, whether your
22  client has waived any right to invoke the 5th
23  Amendment.   And aside from the affidavit where does his
24  right to invoke the 5th Amendment play into all this in
25  terms of providing of documents, providing of sources

40

1   of income, all of this.

2          I'm not talking about contempt I'm talking

3   about his obligation to respond --

4          MR. KRIGER:  To the 5th Amendment issue.

5          THE COURT:  Right.

6          MR. KRIGER:  In terms of timing.  I want to

7   address take once we are done.

8          THE COURT:  Okay.

9          MR. WEISBERG:  With respect to the civil

10  contempt issue, Your Honor, which I think the court is

11  about to address here, is the court is going to direct

12  Mr. Zada to do certain things or to not do certain

13  things, and I think we are talking about issues with

14  respect to either A, enforcing the receiver order on

15  Mr. Zada; or B, addressing a civil contempt issue.

16         THE COURT:  I haven't even gotten to civil

17  contempt yet.

18         MR. WEISBERG:  Okay, fine.

19         THE COURT:  We are going to enforce the

20  receiver's rights, that's what we are doing right now.

21         MR. WEISBERG:  And let me address that point.

22  As we stand here today, not withstanding anything

23  anybody says they intend to do, desire to do, file a

24  motion to do, as we sit here today, there is a pending

25  involuntary petition in the bankruptcy court against

41

1    Mr. Zada.  That affectively imposes an automatic stay

2    on attempts to collect a debt.

3            This proceeding in its entirety is designed

4    for one purpose and one purpose only, and that is to

5    collect a debt.  Accordingly, whether the court's order

6    has been violated, whether it is an order out there

7    outstanding that would require Mr. Zada to do certain

8    things, those issues all relate to the enforcement of

9    an outstanding judgment or outstanding claims of

10   creditors and to collect obligations that are allegedly

11   owed by Mr. Zada.

12           To the extent that this court is going to

13   impose requirements on Mr. Zada in furtherance of that

14   order, that in my mind that imposition today, as

15   opposed to maybe some day next week when and if the

16   case gets dismissed in bankruptcy is a violation of the

17   automatic stay.

18           THE COURT:  We are not ordering him to do

19   anything today in terms of the receiver's costs.  I am

20   ordering him today to cease and desist his activities

21   in Florida.  I am satisfied the court has every right

22   to do that and has the authority to do that.

23           MR. WEISBERG:  If it is to the extent that

24   that ruling is to further the receiver's ability to

25   enforce the collection of a debt then in my mind that

                          42

1    is a violation of the automatic stay.

2             MR. BUQUICCHIO:  Your Honor, can I just

3    respond quickly to that, Your Honor.

4             THE COURT:  Sure.

5             MR. BUQUICCHIO:  And I believe you're on

6    board with this already, but I just going to reiterate

7    this.

8             We provided a motion to the court, to advise

9    the court of Mr. Zada's actions.  The court sought

10   within its own authority to determine, yes, Mr. Zada

11   should come here and explain himself as to why he

12   violated my order.  Not what the receiver did.  Not

13   what this body did.  My order.

14            We have briefed this issue.  They had the

15   opportunity to brief this issue.  We gave you

16   supporting authority right yesterday on your ability.

17   The bankruptcy code Your Honor is not designed to

18   shelter folks like Mr. Zada to hide in bankruptcy to

19   flaunt court orders.  The law on that is clear, period.

20            With respect to criminal contempt there is a

21   precise exemption in the criminal code.  There is a

22   precise exemption in the criminal code that says

23   criminal proceedings are not stayed.

24            MR. ALOIA:  Can I --

25            MR. WEISBERG:  Can I -- hang on.  Can I

43

1    address those points, Your Honor. Counsel is correct

2    the one respect. There are issues with respect to

3    criminal contempt, I put that aside at the very

4    beginning of my argument. We put that aside for right

5    now.

6         We are talking about either the civil

7    enforcement of a civil order or the imposition of civil

8    contempt sanctions. And what I am saying Your Honor,

9    to you is this, there is no additional public policy

10   here other than the enforcement of a collection of a

11   debt that surrounds this entire proceedings. But for

12   that none of us would even been here.

13        The fact that there may have been arguably a

14   violation of this court's order, to the extent that the

15   court is now going to take that order and say to Mr.

16   Zada, Mr. Zada, I am directing you pursuant to this

17   order to do certain things, I want to remind you that

18   this is what this order means, if you violated it

19   before, I am clarifying that for you, this is what you

20   need to do.

21        If the court is going to direct him to do

22   that today, then what the court is doing effectively is

23   saying my order which is designed to collect debt is

24   enforceable today and you should obey it.

25        And I'm saying to this court, that this court

```
 1    does not have the ability, respectfully, to do that

 2    today in light of the automatic stay.

 3              THE COURT:  I think you just argued that,

 4    didn't you?

 5              MR. WEISBERG:  But I am I think I am hearing

 6    counsel saying something to the contrary.

 7              MR. BUQUICCHIO:  No, Your Honor my point was

 8    that this issue has been briefed.  This is why we are

 9    here today.  This is yet another attempt on Mr. Zada's

10    part to delay these proceedings and to delay what the

11    inevitable is here.

12              THE COURT:  Now getting back to this order.

13              MR. BUQUICCHIO:  Yes, Your Honor.

14              THE COURT:  A number of paragraphs don't

15    apply.

16              MR. BUQUICCHIO:  Okay.

17              THE COURT:  I am not making any finding of

18    contempt of any sort today.

19              Is that understood?

20              MR. KRIGER:  Yes.

21              THE COURT:  The order will include the

22    paragraph you have as follows:  It's further ordered

23    defendant, you have plural defendants.

24              MR. ROCHKIND:  It should be plural.

25              MR. BUQUICCHIO:  Equest.
```

45

1    MR. ROCHKIND:  They are both involved in

2    those prior actions.

3         THE COURT:  That the defendants are

4    permanently enjoyed from prosecuting or participating

5    in further litigation against the receiver in Florida

6    or any other jurisdiction without prior consent from

7    this court.  I am checking off that paragraph so when

8    you redo this you'll know.

9         Now, it is further ordered that defendants

10   shall reimburse the receiver for costs and attorney

11   fees.  I want to distinguish this from the $10,000.

12        MR. ROCHKIND:  Simply say other than those

13   involved in the pending motion for expenses.

14        THE COURT:  That's fair.  Include language

15   such as that.  Incurred to date, the amount to be

16   determined by the court.  I am adding that in here.

17        MR. BUQUICCHIO:  Thank you.

18        THE COURT:  Now we have got problems with the

19   remaining other paragraph about documents related to

20   the funds used to pay Ackerman Centerfit (sp) that's

21   one of the law firms here.  I am X-ing that out.  The

22   next paragraph I am X-ing out.  Really it just includes

23   those two paragraphs.

24        MR. ALOIA:  Just so I am clear with the

25   court's order.  The court is ordering Mr. Zada to pay

46

1    all the receiver's expenses so far during the entire

2    receievership or only related to the lawsuit and the

3    actions in Florida?  I just want to make sure this is

4    clear.

5         Because there has been, he submitted to his

6    creditor's examination, he's turned over documents, he

7    has let them in their house.  They have taken detailed

8    inventory.  I just want to make sure that the court --

9    what the court is ordering the fees for.

10        MR. BUQUICCHIO:  It's says incurred to date

11   the amount to be determined by the court.

12        MR. ALOIA:  So the sanction is because, I am

13   trying to understand because he filed this lawsuit --

14        THE COURT:  I assume it is for all expenses

15   that the receiver has incurred to date.  The receiver

16   seems to be the only one in this courtroom that hasn't

17   been paid, and it seems to me has done most of the work

18   to date.

19        So we are going to make sure this receiver,

20   and the receiver is an arm of this court is paid some

21   monies.

22        MR. BUQUICCHIO:  Thank you, Your Honor.

23        THE COURT:  To this date he is the only pro

24   bono person here.

25        And this is frankly an absurdity, and that is

47

1  going to be remedied by this court shortly.  So you get

2  all of those numbers together.

3       MR. BUQUICCHIO:  We will do that Your Honor.

4       THE COURT:  We have an agreement we can be

5  back here, and we haven't finished yet, we can be back

6  here Wednesday and/or Thursday, I know that telescopes

7  the time to get some work done.

8       MR. KRIGER:  If I may, I wanted to address

9  the timing.

10       THE COURT:  Sure.

11       MR. KRIGER:  And, Your Honor, as to the 5th

12  Amendment and the criminal contempt, I don't know that

13  there is any great urgency to that.  But I think this

14  court is well aware of the long criminal contempt, he

15  would have a right to a trial basically, although not a

16  jury trial.

17       THE COURT:  Mr. Kriger, I am not that

18  concerned about that issue now.  I am concerned about

19  the ability of the plaintiff to get financial

20  information --

21       MR. KRIGER:  Information.

22       THE COURT:  -- from Mr. Zada.  And the extent

23  to which the 5th Amendment is going to interfere with

24  that process is of concern.

25       MR. KRIGER:  Okay.

48

```
 1          THE COURT:  That's kind of what your problem

 2     is here.

 3          MR. KRIGER:  And I don't -- Your Honor, I

 4     have a case in New York, a gambling case I have to be

 5     in on Thursday and Friday of next week and the

 6     following week I'm going to Palo Alto for a week for a

 7     Bar Mitzvah.

 8          I wanted to order transcript of at least the

 9     last part of this transcript so I make sure I address

10     and you need.  I don't know what Mr. LaRene's schedule

11     is and if he could perhaps help me out in the briefing.

12     But I just ask for 14 days to get you that brief.  And

13     if I have to do an expedited transcript just to make

14     sure I address everything the court wants addressed,

15     I'm happy to do that.  So 14 days from the receipt of

16     the transcript.

17          MR. ROCHKIND:  Your Honor, if the court would

18     be so kind as to issue an order that the defendants

19     shall preserve and not dispose of any records of any

20     kind, hard copy or computer during the next 14 days, I

21     think there is nothing wrong with accommodating

22     counsel's schedule.

23          MR. KRIGER:  No objection to that.

24          THE COURT:  That's sensible language and will

25     be included in the order.
```

```
1        I am only hesitant because as it turns out

2   this court was wide open next Wednesday and Thursday

3   then after the next two weeks we have a really serious

4   problem.

5        MR. ROCHKIND:  I would be delighted to do it

6   next week I was just trying to be accommodating as a

7   curtesy.  But I would be delighted to do it next

8   Thursday.

9        THE COURT:  No, I am not insensitive to Mr.

10  Kriger's concerns because he has the most important

11  concerns here, in the sense of how the 5th Amendment

12  interplays, that's my concern.

13       MR. ROCHKIND:  Maybe he could attend the Bar

14  Mitzvah by video.

15       MR. KRIGER:  That is a little vacation with

16  my wife for a few days while we are out there.

17       So I would just ask for -- I don't know if

18  they want to file a response, and I am happy to give

19  them whatever time they need, but I'd what like to do

20  is get the transcript early next week and then have

21  14-days from the receipt of the transcript to brief the

22  issue.

23       MR. ROCHKIND:  The transcript not going to be

24  terribly important.  The judge has told you exactly

25  what he wants.
```

```
 1          MR. KRIGER:  Well, let me make sure.

 2          THE COURT:  Before we get into that, okay, we

 3   have the receiver issue resolved in a sense.  We have

 4   got the order with regard to Florida, that is going to

 5   be taken care of.

 6          And we have got the 5th Amendment issue with

 7   regard to source of income for lawyers and whatever

 8   assets, I mean, whatever has been given.

 9          Now with regard to documents.  Continuing

10   need for documents, I mean I guess we have a 5th

11   Amendment problem with regard to those?

12          MR. KRIGER:  I don't believe so, because I

13   believe Mr. Zada's position is that he turned over all

14   documents.

15          MR. ROCHKIND:  Well --

16          MR. KRIGER:  Yes, as to personal documents

17   under Boyd I think those would be protected.  But I

18   don't think they are protected under the -- any

19   corporate entities don't have 5th Amendment privileges,

20   arguably the person who turns them over the act of

21   production in and of itself can be incriminating.  But

22   I am not really concerned about them.

23          THE COURT:  Let me ask them.  What

24   documents --

25          MR. KRIGER:  Yes.
```

```
 1              THE COURT:  -- do you know are extant that
 2      you haven't been able get to?
 3              MR. ALOIA:  Thank you.
 4              MR. KRIGER:  That's the issue.
 5              MR. BUQUICCHIO:  Your Honor we do have a
 6      spread sheet and we will be happy to provide it.  And
 7      then more as a larger issue, Your Honor, we would like
 8      the source of income he is using to pay.
 9              MR. ROCHKIND:  I don't think, if I may, that
10      it is necessary to get into the merits today.  I think
11      the court is asking for briefs on the merits as I
12      understand it.
13              THE COURT:  Yes.
14              MR. ROCHKIND:  And the issues that I heard
15      the court say that it wants briefs on, is whether the
16      5th Amendment at this point in the proceeding given the
17      affidavit and anything else that has happened, protects
18      Mr. Zada from disclosing the source of his income, the
19      source of payments to lawyers, information on his bank
20      accounts, and documents that the receiver has
21      requested.  I think that's -- I don't think it is a
22      difficult question at least forgive me I don't mean to
23      be disrespectful, that was my understanding of what the
24      court said.
25              THE COURT:  No, that's helpful.  But I am
```

```
 1      wondering in terms of trying to move some of this case

 2      forward.  If there are some documents that you know as

 3      I said are extent that you haven't gotten, that you

 4      could request and don't involve 5th Amendment issues.

 5           MR. KRIGER:  But I still don't have

 6      information on bank accounts.  I don't understand what

 7      exactly that means.  My understanding is and please,

 8      Mr. Rochkind, you can correct me if I'm wrong, but my

 9      understanding is he has identified all of his bank

10      accounts.  They have served subpoenas on those banks

11      and his credit card companies.  So I am not sure what

12      information on bank accounts he's referring to.

13           My understanding is that he at least it is

14      his position he's complied with that portion of the

15      order.  What I plan to address is, in my brief, Your

16      Honor, does he have to disclose the source of any

17      income he has?  Does he have to disclose testimonially

18      where any assets are?  If there are assets at all.  And

19      whether or not the 5th Amendment protects him from

20      disclosing where his legal fees are.

21           There is also -- and specifically the court

22      addressed in affidavit A, as I understand it, two

23      specific paragraphs that I need to deal with, is that

24      correct Mr. Rochkind?

25           MR. ROCHKIND:  No.
```

1        MR. KRIGER:  Okay.

2        MR. ROCHKIND:  It's -- it's very, very

3    simple.  I am holding in my hands and I am happy to

4    mark it as an exhibit, that shows the bank accounts we

5    want information of, there are about 60 which

6    information has not yet been received.

7        MR. KRIGER:  What kind every information?  Is

8    it oral information?

9        MR. ROCHKIND:  You know you haven't been

10   involved in the process, it's very clear from the

11   communications it's accounts statements, it's document

12   information on transfers, we can provide all of this to

13   you Mr. Kriger, you just haven't been in the loop.  But

14   this is not such a hard thing.

15       THE COURT:  That's helpful.  I mean we have

16   got specific stuff that he wants.

17       MR. ALOIA:  I will happy -- we will be happy

18   to provide to Mr. Kriger and to Mr. Aloia, what we have

19   provided him before actually the banks accounts and all

20   the information that we need, we can do that within

21   days.  But the issues, the legal issues, we are happy

22   to that, and I appreciate the court's intervention but

23   the legal issues, again, it is not related to specific

24   paragraphs of an affidavit, Mr. Kriger.

25       The legal issue is, those paragraphs raise

1    the issue of waiver.  They don't limit the issue.  The

2    legal issues are very simply, given the affidavit,

3    given what's happened in this case, when we now ask Mr.

4    Zada what's your source of income, where are all your

5    bank accounts who are the third parties who are giving

6    you money?  How are you paying your lawyers?  And where

7    are these documents the receiver asked for, has asked

8    for?

9         The legal question is, does the 5th Amendment

10   now entitle Mr. Zada to say he doesn't have to do that?

11   Maybe it does.  Maybe it doesn't.  I am not trying to

12   take a position.  That's the issue.  Very simple.

13        MR. ALOIA:  Your Honor, I am concerned about

14   this interplay about producing documents during the

15   time in this bankruptcy stay as to Mr. Zada --

16        MR. ROCHKIND:  I didn't asks anybody to

17   produce documents.  I didn't ask you --

18        MR. ALOIA:  Can you let me finish?

19        We are talking about taking collection action

20   today for him to produce documents which is a

21   collection action during the stay.  That that issue has

22   to be determined if and when that dismissal takes

23   place.

24        THE COURT:  All right.  All right.  Look.  We

25   must produce this information once the stay is lifted.

```
 1                 All right.  If there are -- if there is a 5th
 2     Amendment problem with any of them then it has to be
 3     indicated and why based upon the right under the 5th
 4     Amendment.
 5                 MR. ALOIA:  And I just want to make it clear
 6     to this court, I have never seen this list.  This list
 7     has never been produced.
 8                 THE COURT:  I don't care about that.
 9                 MR. ALOIA:  Your Honor, but I want to make it
10     clear they have made it sound like we have seen this
11     list and we haven't produced it.  We have never seen
12     it.
13                 THE COURT:  All right.
14                 MR. BUQUICCHIO:  Your Honor --
15                 THE COURT:  So when we next assemble we are
16     going to have the information with regard to money for
17     the receiver.  The order we talked about with regard to
18     Florida is going to be in place, because it will be in
19     place today.  We are going to at the same time we try
20     to resolve the 5th Amendment issue.  We're going to be
21     determining the issue once the stay is lifted, I assume
22     that it will, on the subpoena with regard to Mr. Zada's
23     mother and the so called $10,000 issue with regard to
24     the receiver.
25                 MR. ROCHKIND:  Correct.
```

56

```
1          MR. BUQUICCHIO:  Yes.

2          THE COURT:  The same day.  Now you wanted

3    14 days get your brief in.  14 days is the 21st -- I am

4    I'm sorry the 28th of May.

5          I trust we would then need a response.

6          MR. BUQUICCHIO:  I'm sorry, Your Honor.

7          THE COURT:  A response from Mr. Kriger.

8          MR. KRIGER:  Can I, I am -- I'm sorry the

9    28th is the week that I have that Bar Mitzvah, so could

10   I have just until the following Friday.  And if I can

11   get it done sooner Mr. LaRene can handle it I'll get it

12   in earlier.

13         THE COURT:  All right.  No later than

14   June 4th.

15         MR. KRIGER:  Thank you.

16         THE COURT:  Obviously you have a right to

17   respond, you may want to start doing some work on the

18   issue before we even get anything from Mr. Kriger and

19   Mr. LaRene.

20         MR. BUQUICCHIO:  Now with respect to payment

21   to the receiver are we holding that off until that time

22   as well?

23         THE COURT:  I want everybody back on --

24         MR. BUQUICCHIO:  Got you.

25         THE COURT:  -- on some day before -- I want
```

```
 1       to carve out some time for this.  I think this is the
 2       best I can do in terms of assuring we can dedicate a
 3       day to this, if it takes a day.  And it would be the
 4       first full week in July.  July 7th, Wednesday.  Just
 5       making some progress, we will give everybody ample time
 6       to load up.
 7              MR. KRIGER:  And the contempt is just put
 8       aside the criminal contempt.
 9              THE COURT:  It is.
10              MR. KRIGER:  For indefinitely.
11              THE COURT:  Because as I said it is my
12       interest is getting information from him --
13              MR. KRIGER:  I understand.
14              THE COURT:  -- once we resolve the 5th
15       Amendment issue, and getting this receiver paid and
16       having the receiver having the responsibility of taking
17       care of the property, including that in Florida.
18              MR. ROCHKIND:  May I ask a final question,
19       I'm sorry, I am not that experienced in this court.  I
20       wonder if because I am going to have this order
21       retyped, I can submit it based on what the court said
22       without having to send it around to eight lawyers
23       because we have had some problems with that.
24              And the language that the court has indicated
25       in this written document is, it is further ordered that
```

58

1    defendants are permanently enjoined from prosecuting or

2    participating in further litigation against receiver in

3    Florida and any other jurisdiction without prior

4    consent from this court.

5         Second, it is further ordered that the

6    defendants shall reimburse the receiver for all costs

7    and attorney fees incurred to date, the amount to be

8    determined by the court.

9         And I believe that's it. And I would like to

10   submit that if I may directly to the court.

11        THE COURT: You may.

12        MR. ALOIA: Your Honor --

13        MR. BUQUICCHIO: Thank you, Your Honor.

14        MR. ALOIA: -- I just want to make a

15   record --

16        MR. ROCHKIND: Thank you, Your Honor.

17        MR. ALOIA: -- there is an automatic stay as

18   to that litigation in Florida at this time pursuant to

19   the bankruptcy laws. And I am making this record just

20   for appealable issue that that order would be a

21   violation of the automatic stay laws so I just want to

22   make the record on that.

23        THE COURT: Okay. Record made.

24        I didn't give you a date when your formal

25   response to Mr. Kriger's motion should be in.

59

```
 1              MR. BUQUICCHIO:  Yes, Your Honor.

 2              THE COURT:  You'll have ample time now, Mr.

 3      Kriger you got to get it in by June 4th, response by

 4      June 18th I'll need a couple of weeks to read all this

 5      stuff.

 6              MR. KRIGER:  If I find it necessary can I

 7      file a reply brief within seven days.

 8              THE COURT:  Sure.  Okay.

 9              MR. KRIGER:  So 6-25 for the reply.

10              THE COURT:  Thank you.

11

12

13              (At 1:34 p.m. matter concluded.)

14

15

16

17

18

19

20

21

22

23

24

25
```

COPY

1   R E P O R T E R ' S   C E R T I F I C A T E

2

3

4   STATE OF MICHIGAN)

5   COUNTY OF WAYNE   )

6

7      I, RICHARD JOSEPHS, RPR, CMRS, CSR-2345, Official

8   Court Reporter in and for the Third Judicial Circuit,

9   Wayne County, State of Michigan, do hereby certify that

10   the foregoing pages 1 through 61 inclusive, was

11   reduced to typewritten form by means of

12   Computer-Assisted Transcription and comprise a true and

13   accurate transcript of the proceedings taken in the

14   above-entitled matter, on Friday, May 14, 2010.

15

16

17

18      Richard Josephs, RPR, CMRS, CRS-2345
        Certified Manager of Reporting Services
19      Registered Professional Reporter
        Certified Shorthand Reporter

20

21

22

23

24

25

61

# EXHIBIT C

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

SERGEI FEDOROV, an individual,

Plaintiff,

vs.

JOSEPH ZADA, an individual; ZADA
ENTERPRISES, LLC, a Michigan limited
liability company; XANDARIUS LLC, a
Michigan limited liability company;
XANDARIUS LLC, a Florida limited liability
company; and EQUEST PROPERTIES, LLC, a
Florida limited liability company, Jointly
and Severally,

Defendants.

Case No. 09-018061-CB
Hon. Michael F. Sapala

---

| | |
|---|---|
| Peter M. Alter (P10145)<br>Louis P. Rochkind (P24121)<br>Michael F. Jacobson (P47059)<br>Jaffe, Raitt, Heuer & Weiss P.C.<br>**Attorneys for Plaintiff**<br>27777 Franklin Road, Suite 2500<br>Southfield, MI 48034-8214<br>Ph: (248) 351-3000<br>Fx: (248) 351-3082 | Benjamin J. Aloia (P54424)<br>Aloia & Associates, P.C.<br>**Attorneys for Defendants**<br>48 S. Main Street, Ste. 3<br>Mount Clemens, MI 48043<br>Ph: (586) 783-3300 |
| Marc G. Beginin (P65576)<br>Marc G. Beginin, PLLC<br>**Co-Counsel for Plaintiff**<br>2023 Hazel Street<br>Eton Street Station<br>Birmingham, MI 48009<br>Ph: (248) 593-1028<br>Fx: (248) 593-1029 | James J. Vlasic (P29485)<br>Thomas P. Bruetsch (P57473)<br>Bodman LLP<br>**Attorneys for Intervenor Peoples State Bank**<br>201 W. Big Beaver Rd., Ste. 500<br>Troy, MI 48084<br>Ph: (248) 743-6000<br>Fax: (248) 743-6002 |
| | Michael S. McElwee (P36088)<br>Steven T. Buquicchio (P62076)<br>Timothy P. Monsma (P72245)<br>Varnum Riddering Schmidt Howlett<br>**Attorneys for Receiver**<br>Bridgewater Place, 333 Bridge Street, N.W.<br>Grand Rapids, MI 49504<br>Ph: (616) 336-6000 |

## ORDER

At a session of said Court, held in the City of Detroit, County of Wayne,
State of Michigan on _____**MAY 1 9 2010**_____.

PRESENT: HONORABLE MICHAEL F. SAPALA
Circuit Court Judge

Upon the reading and filing of the Receiver's Ex Parte Motion for Order to Show Cause,

Joseph Zada's Response thereto, a show cause hearing having been heard on May 14, 2010, and

the Court being fully advised in the premises;

NOW THEREFORE IT IS HEREBY ORDERED that Defendants are permanently

enjoined from prosecuting or participating in further litigation against the Receiver in Florida or

any other jurisdiction without prior consent from this Court.

IT IS FURTHER ORDERED that Defendants shall reimburse the Receiver for all costs

and attorneys' fees incurred to date, the amount to be determined by this Court.

IT IS SO ORDERED.

**MICHAEL F. SAPALA**
_____
Honorable Michael F. Sapala
Circuit Court Judge

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK

BY _C. Patterson_
DEPUTY CLERK

2

# EXHIBIT
# 4

*[Certificate of Service]*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JOSEPH PAUL ZADA,                         Case No. 10-54291
                                          Chapter 7 (involuntary)
        Alleged Debtor.                   Honorable Steven W. Rhodes
_____/

## CERTIFICATE OF SERVICE

I, Lawrence A. Lichtman, certify that on June 1, 2010, I electronically filed *Motion of Alleged Debtor, Pursuant to 11 U.S.C. §362(k)(1), for Order Imposing Sanctions Against (I) Receiver of Joseph P. Zada, et al., and (II) Sergei Federov, Based on Willful Violation of Automatic Stay* and attached exhibits with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record listed on the Court's ECF system for the above-captioned case. I further state that on June 1, 2010 I served a copy of the *Motion of Alleged Debtor, Pursuant to 11 U.S.C. §362(k)(1), for Order Imposing Sanctions Against (I) Receiver of Joseph P. Zada, et al., and (II) Sergei Federov, Based on Willful Violation of Automatic Stay* and attached exhibits via First Class U.S. Mail upon Steven T. Buquicchio, Esq. at Varnum Riddering Schmidt & Howlett, P.O. Box 352, Grand Rapids, Michigan 49501-0352.

                         */s/ Lawrence A. Lichtman*

# EXHIBIT
# 5

***[Affidavit – intentionally left blank]***